NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Original
No. LD-2016-0005


PETITION OF SANJEEV LATH & a.

Submitted:  November 17, 2016
Opinion Issued:  February 3, 2017


Sanjeev Lath and Barbara Belware, self-represented parties, by brief.


Janet F. DeVito, general counsel (Brian R. Moushegian, deputy general counsel, on the brief), for the attorney discipline office.


Devine, Millimet & Branch, Professional Association, of Concord (Mitchell M. Simon and Joshua M. Wyatt on the brief), for John F. Bisson.


BASSETT, J.  The petitioners, Sanjeev Lath and Barbara Belware, have petitioned for a writ of certiorari, see Sup. Ct. R. 11, challenging the decisions of the Office of General Counsel of the Attorney Discipline Office (ADO) and the Complaint Screening Committee (CSC).  The ADO had dismissed a grievance filed by the petitioners against Attorney John F. Bisson.  Upon the petitioners' request for reconsideration, the CSC affirmed the ADO's decision.  In their petition, the petitioners argue that the ADO and the CSC erred by declining to docket their grievance as a complaint, and that the CSC erred by failing to answer the questions raised in the petitioners' request for reconsideration.  The respondents—the ADO and Attorney Bisson—challenge the merits of the

petitioners' claims, and also assert that the petitioners lack standing to bring this petition. Because we conclude that the petitioners lack standing, we dismiss the petition.

We begin by providing background regarding the attorney discipline system. Pursuant to our rule-making authority under the State Constitution, see N.H. CONST. pt. II, art. 73-a, we have established an attorney discipline system to discharge our inherent and statutory authority to discipline attorneys, Petition of Brooks, 140 N.H. 813, 817 (1996); RSA 311:8 (2015); RSA 490:4 (2010); see also Sup. Ct. R. 37, 37A. "[T]he purpose of attorney discipline is to protect the public, maintain public confidence in the bar, preserve the integrity of the legal profession, and prevent similar [mis]conduct in the future . . . ." Bosse's Case, 155 N.H. 128, 131 (2007).

The attorney discipline system is governed by the Supreme Court Rules, see Sup. Ct. R. 37, 37A, and has "disciplinary jurisdiction" over "[a]ny attorney admitted to practice law in this State," Sup. Ct. R. 37(1)(b). The standards of conduct for New Hampshire attorneys are set forth in the New Hampshire Rules of Professional Conduct. N.H. R. Prof. Conduct Statement of Purpose. An attorney may be disciplined under the Supreme Court Rules if it is determined by clear and convincing evidence that the attorney violated the Rules of Professional Conduct. See Young's Case, 154 N.H. 359, 366 (2006); see also Sup. Ct. R. 37A(III)(d)(2)(C).

One of the responsibilities of the ADO is to conduct an initial review of a grievance submitted by an individual. See Sup. Ct. R. 37A(II)(a)(2)(A), (3)(A). A grievance is a written submission that "call[s] to [the ADO's] attention conduct that the grievant believes may constitute misconduct by an attorney." Sup. Ct. R. 37A(I)(c). When a grievance is filed, the ADO reviews the grievance to determine whether the attorney in question is subject to the disciplinary jurisdiction of the attorney discipline system and whether the grievance meets certain other enumerated requirements. Sup. Ct. R. 37A(II)(a)(3)(A)-(B).

If the ADO concludes that a grievance satisfies those requirements, it dockets the grievance as a complaint—otherwise, the grievance is dismissed. Sup. Ct. R. 37A(II)(a)(3)(C), (5)(A). If the ADO declines to docket a grievance, the grievant may file a request for reconsideration. Sup. Ct. R. 37A(II)(a)(4)(C). The request is reviewed by the CSC, id., a nine-member panel composed of five attorneys and four "non-attorneys," Sup. Ct. R. 37(5)(a). The CSC must either "affirm the decision of the [ADO] or direct that the grievance be docketed as a complaint." Sup. Ct. R. 37A(II)(a)(4)(C). Once a grievance is docketed as a complaint, the respondent attorney must file an answer to the complaint, and the ADO may conduct a further investigation "as may be appropriate." Sup. Ct. R. 37A(II)(a)(5)(C), (a)(6).

2

Turning to the present petition, the record reflects the following facts. On December 30, 2015, the petitioners filed a grievance with the ADO. The petitioners' grievance arises out of the annual meeting of the Oak Brook Condominium Owners' Association, which took place in November 2015. The petitioners are unit owners at Oak Brook Condominium. Attorney Bisson represented the condominium association at the meeting. The petitioners allege that, during the meeting, Attorney Bisson violated the Rules of Professional Conduct by, among other things, recording the meeting without the petitioners' knowledge or consent.

The ADO reviewed the factual allegations in the petitioners' grievance, along with the exhibits that the petitioners provided. On January 15, 2016, the ADO's assistant general counsel sent a three-page letter to the petitioners, in which he reviewed the allegations, assessed the claimed violations, and explained the reasoning that led to his conclusion that "a hearing panel would not likely find clear and convincing evidence that" Attorney Bisson violated the Rules of Professional Conduct. Regarding the claim that Attorney Bisson made a recording without the petitioners' knowledge or consent, he noted that one of the petitioners' exhibits showed that, in fact, the meeting had not been recorded. Based upon the analysis of the petitioners' allegations, the ADO declined to docket the petitioners' grievance as a complaint.

The petitioners filed a request for reconsideration, asserting that their grievance satisfied the requirements for docketing and that the ADO erred by dismissing their grievance. In their request, the petitioners listed a number of alleged errors in the ADO's decision, which they labeled "[q]uestion[s]." In a letter dated February 25, 2016, the CSC informed the petitioners that it had affirmed the ADO's decision. The petitioners then filed a "Motion for Clarification" with the CSC, asking that the CSC answer the questions that the petitioners had raised in their request for reconsideration. The CSC responded to the motion by letter, dated March 18, 2016, acknowledging receipt of the motion, and stating that "th[e] matter is now closed." This petition followed.

In their petition, the petitioners argue that the Supreme Court Rules required the ADO to docket their grievance as a complaint and initiate an investigation. They assert that the ADO and the CSC erred by declining to docket their grievance on the basis that a hearing panel would be unlikely to find, by clear and convincing evidence, that Attorney Bisson violated the Rules of Professional Conduct.

The petitioners further contend that the CSC erred by failing to answer the questions that the petitioners raised in their request for reconsideration. Although the petitioners do not identify a rule that requires the CSC to explicitly answer questions posed in a request for reconsideration, we read the petitioners' argument to be that the CSC was required to respond to each

specific question raised.  Thus, all of the petitioners' claims on appeal relate to alleged violations of the Supreme Court Rules by the ADO and the CSC.

The respondents dispute the merits of the petitioners' arguments. However, they also argue that the petitioners lack standing to bring this petition.  We agree.

Certiorari is an extraordinary remedy that is not granted as a matter of right, but rather at the discretion of the court.  Petition of State of N.H. (State v. MacDonald), 162 N.H. 64, 66 (2011); see Sup. Ct. R. 11(1).  Our review of an agency's decision on a petition for a writ of certiorari entails examination of whether the agency "acted illegally with respect to jurisdiction, authority or observance of the law or has unsustainably exercised its discretion or acted arbitrarily, unreasonably or capriciously."  Petition of Chase Home for Children, 155 N.H. 528, 532 (2007).  "We exercise our power to grant such writs sparingly and only where to do otherwise would result in substantial injustice."  Id.

Generally, "[i]n evaluating whether a party has standing to sue, we focus on whether the party suffered a legal injury against which the law was designed to protect."  Libertarian Party of N.H. v. Sec'y of State, 158 N.H. 194, 195 (2008) (quoting Asmussen v. Comm'r, N.H. Dep't of Safety, 145 N.H. 578, 587 (2000)).  This requirement "rests upon the constitutional principle that the judicial power ordinarily does not include the power to issue advisory opinions."  Id. at 196; see also Duncan v. State, 166 N.H. 630, 641-43 (2014) (discussing constitutional significance of the doctrine of standing).  In the context of a petition for a writ of certiorari, we have held that a party has standing if his "rights may be directly affected by the decision of a lower tribunal."  Melton v. Personnel Comm'n, 119 N.H. 272, 277 (1979) (emphasis omitted).

In other words, a person seeking to challenge an agency's action through a petition for a writ of certiorari must show that his personal rights have been or will be "impaired or prejudiced" by the agency's decision.  Duncan, 166 N.H. at 640-45 (discussing constitutional requirements for standing).  A party does not satisfy this requirement if his only injury is a "generalized wrong allegedly suffered by the public at large."  Id. at 646 (quotation omitted).  Similarly, a mere general interest in an administrative proceeding—for example, an interest in ensuring the "proper administration of the laws"—is not sufficient to confer standing.  Id. at 644 (quotation omitted); see also Appeal of N.H. Right to Life, 166 N.H. 308, 314-15 (2014).

To determine whether a grievant has a personal interest in an attorney disciplinary proceeding that is sufficient to confer standing, we examine the nature and purposes of the attorney disciplinary system.  See Appeal of Campaign for Ratepayers Rights, 142 N.H. 629, 632 (1998) (assessing whether

4

parties had standing to appeal decision of Public Utilities Commission by reference to the nature of the commission's determination).  As noted above, the purposes of attorney discipline include the protection of the public and the maintenance of public confidence in the bar.  See Bosse's Case, 155 N.H. at 131.  Attorney discipline is not intended to punish attorneys, id., nor does it exist "as a means of redress for one claiming to have been personally wronged by an attorney," Cotton v. Steele, 587 N.W.2d 693, 699 (Neb. 1999).  Instead, "the real question at issue in a [disciplinary] proceeding is the public interest and an attorney's right to continue to practice a profession imbued with public trust."  State v. Merski, 121 N.H. 901, 909 (1981) (quotation omitted); see also Cotton, 587 N.W.2d at 699.

As a consequence, disciplinary proceedings are not treated as "lawsuits between parties litigant but rather are in the nature of an inquest or inquiry as to the conduct of the respondent [attorney]."  Merski, 121 N.H. at 909 (quotation omitted).  The grievant participates in the proceedings not to enforce his or her own rights, but to "supply evidence of the alleged attorney malfeasance."  Akinaka v. Disciplinary Board, 979 P.2d 1077, 1085 (Haw. 1999).  This principle is reflected in the rules governing the attorney discipline system, which make clear that a grievant may not control the prosecution of a charge, see Sup. Ct. R. 37(18), and that the complainant is not a party to the disciplinary proceeding, Sup. Ct. R. 37A(I)(j).

Because attorney disciplinary proceedings are structured in this manner, no personal rights or remedies of the grievant are adjudicated in, or directly affected by, a disciplinary proceeding.  The grievant neither receives a legally cognizable benefit when an attorney is disciplined, nor sustains a legally cognizable injury when the attorney is not disciplined.  Rather, the benefit of attorney discipline is bestowed upon the public at large, Merski, 121 N.H. at 909, and "the only one who stands to suffer direct injury in a disciplinary proceeding is the lawyer involved," Doyle v. Oklahoma Bar Assn., 998 F.2d 1559, 1567 (10th Cir. 1993).  Nor does the grievant have a personal stake in the proceedings by virtue of his participation in the disciplinary process.  As we have observed, an agency may "permit third parties to participate in proceedings before it . . . without creating a right in those parties to review a negative decision that the [agency] may ultimately make."  Ruel v. N.H. Real Estate Appraiser Bd., 163 N.H. 34, 41 (2011) (quotation omitted).  Simply put, regardless of how the ADO or the CSC ultimately addresses a grievance, no legally cognizable interest of the grievant is implicated in an attorney disciplinary proceeding.  See In re Attorney Disciplinary Appeal, 650 F.3d 202, 204 (2d Cir. 2011) (stating that a complainant lacks standing because his interest "results only from [his] status as a member of the public at large").

Our reasoning is similar to that employed when courts consider whether, and to what extent, a victim may participate in a criminal prosecution.  As a general proposition, "a private citizen lacks a judicially cognizable interest in

5

the prosecution or nonprosecution of another." <u>Linda R.S. v. Richard D.</u>, 410 U.S. 614, 619 (1973). It is for this reason that, generally, a victim has no right to intervene in the criminal case of the accused, <u>see</u> <u>Rullo v. Rullo</u>, 121 N.H. 299, 300 (1981), to appeal the substantive rulings of the trial court, <u>see, e.g.</u>, <u>Cooper v. District Court</u>, 133 P.3d 692, 703-05 (Alaska Ct. App. 2006) (collecting cases), or to contest the prosecutor's decision to dismiss criminal charges, <u>Gansz v. People</u>, 888 P.2d 256, 258-59 (Colo. 1995) (en banc). These cases reflect the underlying principle that "[a] crime is a public wrong, raising an issue between the state and the accused," rather than between the accused and the accuser. 1 R. McNamara, <u>New Hampshire Practice: Criminal Practice and Procedure</u> § 1.01, at 1 (2010). This logic—that, given the purpose and design of the criminal justice system, a victim does not have standing to seek judicial review of a criminal disposition—applies with equal force to the attorney discipline system.

Therefore, in light of the nature and purposes of the attorney discipline system, we conclude that a grievant does not have a personal interest in the outcome of an attorney disciplinary proceeding that is sufficient to confer standing. In reaching this conclusion, we join the many courts that have likewise held that a grievant does not have standing to challenge the disciplinary authority's disposition of a grievance. <u>See, e.g.</u>, <u>In re Request for Investigation of an Atty.</u>, 867 N.E.2d 323, 324-25 (Mass. 2007); <u>Rousseau v. Statewide Grievance Committee</u>, 133 A.3d 947, 951 (Conn. App. Ct. 2016) (per curiam); <u>see also</u> <u>In re Attorney Disciplinary Appeal</u>, 650 F.3d at 203 (collecting cases); <u>Akinaka</u>, 979 P.2d at 1084-86. We agree with those courts that have reasoned that to confer standing upon a private individual in these circumstances would shift the focus of the disciplinary process from the public interest to the private interests of the grievant. <u>See, e.g.</u>, <u>Akinaka</u>, 979 P.2d at 1085. To do so would contravene the essential purpose of the attorney discipline system—to protect the public.

Accordingly, because the petitioners lack standing to appeal the disposition of their grievance, we dismiss their petition for a writ of certiorari. <u>See</u> <u>Libertarian Party of N.H.</u>, 158 N.H. at 196.

<u>Dismissed</u>.

DALIANIS, C.J., and CONBOY and LYNN, JJ., concurred.