LYNN, J., dissenting.
In my view, there are two problems with the majority's decision to grant certiorari relief to the petitioner. First, I disagree with the majority's conclusion that New Hampshire Administrative Rule He-M 503.14(a) granted him the right to have the area agency with which he is affiliated for the provision of developmental services changed to Lakes Region Community Services (LRCS) when he moved from the Secure Psychiatric Unit (SPU) to the Laconia Designated Receiving Facility (Laconia DRF).
The regulation states:
(a) If an individual, guardian, or representative plans to relocate where the individual lives and wishes to transfer the individual's area agency affiliation to that region, the individual, guardian, or representative shall notify, in writing, the area agency in the current region and the area agency in the proposed region that the individual is moving and wishes to transfer services to that region.
**209 (b) The current area agency shall send to the proposed area agency all information regarding the individual, including information concerning funding for the individual's services.
(c) The current area agency shall transfer to the proposed area agency all *632 funds being spent for the individual's services, including funds allocated for administrative costs, with the exception of regional family support state funds.
(d) Service coordinators shall coordinate individual transfers so that benefits obtained from third party resources such as Medicaid and the division of vocational rehabilitation shall not be lost or delayed during the transition from one region to another.
N.H. Admin. R., He-M 503.14. This regulation seems to me to be merely a housekeeping rule that recognizes that the area agency which provides services to a developmentally disabled person generally will change when the person relocates to another region of the state. It establishes a procedure for providing notice of the relocation, transferring information and funding, etc., in order to effectuate the transfer of services to the area agency that covers the location to which the recipient has moved.
Although the regulation is drafted in terms which envision that such requests will be granted (as I presume they usually are), nothing in the text of the regulation reflects an intent to bestow upon service recipients a judicially enforceable "right" to have the services provided by any particular area agency. In particular, I find nothing in the text of the regulation that can reasonably be construed to confer an entitlement to a transfer in circumstances, such as exist here, in which there has been no showing that the failure to effectuate the transfer of services has adversely affected in any way the person receiving the services. At most, the regulation, when considered in conjunction with RSA chapter 171-A's various references to "community living," may be read to reflect a purpose to ensure that services be provided to a developmentally disabled person in the community where he or she lives, rather than by any particular service agency.
This brings me to the second and more fundamental problem with the decision of the majority. The petitioner has neither alleged nor proved that he has suffered the type of concrete injury that would give us subject matter jurisdiction to adjudicate this dispute. See Petition of Lath, 169 N.H. 616, 621, 154 A.3d 1240, 1244 (2017) ("[A] person seeking to challenge an agency's action through a petition for a writ of certiorari must show that his personal rights have been or will be 'impaired or prejudiced' by the agency's decision."); see also Birch Broad. v. Capitol Broad. Corp., 161 N.H. 192, 199, 13 A.3d 224 (2010) ("The requirement that a party demonstrate harm to maintain a legal challenge rests upon the constitutional principle that judicial power ordinarily does **210 not include the power to issue advisory opinions."). Although no party challenges the petitioner's standing, because standing is a necessary prerequisite to our exercise of subject matter jurisdiction, it may be raised by the court sua sponte. See Duncan v. State, 166 N.H. 630, 639-40, 102 A.3d 913 (2014). The majority essentially assumes that the petitioner was harmed, but he does not claim that he is not getting the services that he should be getting under RSA chapter 171-A. After Community Bridges in Concord stopped providing him services, the Brain Injury Association of New Hampshire began providing the services to him. Thus, he is receiving all of the services to which he is entitled.
If, for example, the petitioner had alleged that the Brain Injury Association was providing him inferior or incomplete services compared to the services that LRCS would provide, or that the services were not being provided to him in Laconia where he now resides, or that he was being delayed or inconvenienced by the *633 Brain Injury Association providing those services, he would have standing, and his case would be properly before us. However, the Administrative Appeals Unit (AAU) of the New Hampshire Department of Health and Human Services found that the appellant was "currently receiving independent case management services through the Brain Injury [Association] as arranged by the Bureau of Developmental Services." Consequently, the AAU found that the petitioner was "being afforded all the necessary coordination of services referred to in He-M 503 while he is confined to the [Laconia] DRF" and therefore was "suffering no harm" from LRCS's decision to defer accepting him. In his motion to reconsider, the petitioner did not argue that this finding was erroneous. Nor did he argue in his appellate brief, or at oral argument, that he is not receiving the services to which he is entitled.
Therefore, because the petitioner has not alleged actual harm and has not challenged the AAU's finding that he has suffered no harm, he lacks standing, and this case should be dismissed.
For the reasons stated above, I respectfully dissent.