# ENTRY ORDER

2019 VT 29

SUPREME COURT DOCKET NO. 2019-093

MAY TERM, 2019

| | | |
|---|---|---|
| In re John Paul Faignant, Esq. | } | Original Jurisdiction |
| | } | |
| | } | |

In the above-entitled cause, the Clerk will enter:

¶ 1.      Petitioner filed a petition for extraordinary relief, asking this Court to order Bar Counsel to refer for investigation a complaint he made against an attorney.  Bar Counsel moves to dismiss the petition.  We grant his request.  We agree with "every jurisdiction that has ever confronted" this issue and conclude that petitioner fails to "allege an injury sufficient to confer standing." Boyce v. N.C. State Bar, 814 S.E.2d 127, 134 (N.C. Ct. App. 2018) (recognizing that many individuals have "taken issue with a state bar's failure to act on a disciplinary grievance and then sought relief from the courts," and "every jurisdiction that has ever confronted [this issue] has concluded that the complainant has not alleged an injury sufficient to confer standing" (citing cases)).

¶ 2.      Before turning to the merits, we address petitioner's request, made almost two months after filing his petition, to add his client as a "co-petitioner" because she was "subjected to the conduct complained of."  We deny his request.  The subject of this petition for extraordinary relief is the complaint that petitioner filed with the Professional Responsibility Program; his client filed no such complaint.  Even if we were to grant petitioner's request to add a co-petitioner, we would reach the same result.  Neither petitioner nor his client has standing to pursue this case.

¶ 3.      We begin with an overview of the attorney discipline process in Vermont.  The Court, pursuant to its constitutional authority, "has established a program to enforce the Rules of Professional Conduct and provide for attorney discipline." In re Robinson, 2019 VT 8, ¶ 21, __ Vt. __, __ A.3d __.  The Professional Responsibility Board administers the disciplinary program. See id.  The purpose of attorney discipline "is to protect the public from persons unfit to serve as attorneys and to maintain public confidence in the bar, as well as to deter other attorneys from engaging in misconduct." Id. ¶ 73 (quotation omitted).

¶ 4.      Pursuant to rules promulgated by this Court, Bar Counsel screens all complaints filed with the Professional Responsibility Program.  A.O. 9, Rule 10(A).  "If the conduct which is the subject of the complaint appears to constitute misconduct that may require disciplinary sanctions, disciplinary counsel shall investigate further to determine whether formal disciplinary proceedings should be pursued under Rule 11."  A.O. 9, Rule 10(C).  "Bar counsel may close or dismiss complaints, which, in bar counsel's judgment, do not require either formal investigation by disciplinary counsel or referral to an assistance panel."  A.O. 9, Rule 10(D).  "In such cases,

Bar Counsel must inform the complainant in writing of the decision and the reasons therefor; and shall notify the complainant that he or she may seek review from the Board chair." A.O. 9, Rule 10(D).

¶ 5.     Petitioner here filed a complaint with the Professional Responsibility Program in August 2018. Bar Counsel reviewed the complaint and dismissed it, explaining to petitioner the reasons for his decision. Upon petitioner's request, the Chair of the Professional Responsibility Board reviewed the matter and upheld Bar Counsel's decision. Petitioner then tried to appeal the Chair's decision to this Court. We dismissed the case, finding that petitioner had no right to appeal.

¶ 6.     Petitioner has now filed a petition for extraordinary relief under Vermont Rules of Appellate Procedure 21. Rule 21 abolished the "extraordinary writs of certiorari, mandamus, prohibition, and quo warranto" and provides that "[a]ny relief that would have been available through those writs by original action in the Supreme Court may be sought only as provided for in this rule." V.R.A.P. 21(b)(1)-(2). A petitioner "must concisely set forth the reasons why there is no adequate remedy under these rules or by appeal or through proceedings for extraordinary relief in the superior court." V.R.C.P. 21(a)(3).

¶ 7.     We conclude that petitioner lacks standing to pursue his petition for extraordinary relief. In Vermont, a court has "subject matter jurisdiction only over actual cases or controversies involving litigants with adverse interests." Brod v. Agency of Nat. Res., 2007 VT 87, ¶ 8, 182 Vt. 234, 936 A.2d 1286; see also In re Constitutionality of House Bill 88, 115 Vt. 524, 529, 64 A.2d 169, 172 (1949) ("The judicial power, as conferred by the Constitution of this State upon this Court, is the same as that given to the Federal Supreme Court by the United States Constitution; that is, the right to determine actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction." (quotation omitted)).

¶ 8.     "To satisfy the threshold requirement of standing, a plaintiff must present a real— not merely theoretical—controversy involving the threat of actual injury to a protected legal interest rather than merely speculating about the impact of some generalized grievance." Turner v. Shumlin, 2017 VT 2, ¶ 11, 204 Vt. 78, 163 A.3d 1173 (per curiam) (quotation omitted). "To meet this burden, a plaintiff must show (1) injury in fact in the form of an invasion of a legally protected interest, (2) causation, and (3) redressability." Id. (alterations omitted); see also Parker v. Town of Milton, 169 Vt. 74, 78, 726 A.2d 477, 480 (1998) (explaining that to have standing, "injury must be an invasion of a legally protected interest, not a generalized harm to the public" (quotation omitted)). Petitioner cannot satisfy these requirements.

¶ 9.     In reaching our conclusion, we find persuasive a recent decision by the New Hampshire Supreme Court, In re Petition of Lath, 154 A.3d 1240 (N.H. 2017), which echoes the holdings of numerous other courts that have considered this issue. In Lath, the petitioners sought extraordinary relief, seeking to challenge the dismissal of a grievance that they filed against an attorney. After examining "the nature and purposes of the attorney disciplinary system," the court concluded that the grievants lacked "a personal interest in an attorney disciplinary proceeding . . . sufficient to confer standing." Id. at 1244. As the court explained:

> [T]he purposes of attorney discipline include the protection of the public and the maintenance of public confidence in the bar.

> Attorney discipline is not intended to punish attorneys, nor does it exist as a means of redress for one claiming to have been personally wronged by an attorney. Instead, the real question at issue in a disciplinary proceeding is the public interest and an attorney's right to continue to practice a profession imbued with public trust.
>
> As a consequence, disciplinary proceedings are not treated as lawsuits between parties litigant but rather are in the nature of an inquest or inquiry as to the conduct of the respondent attorney. The grievant participates in the proceedings not to enforce his or her own rights, but to supply evidence of the alleged attorney malfeasance.

Id. (alterations and quotations omitted).

¶ 10.   Consequently, as the Lath court explained, "no personal rights or remedies of the grievant are adjudicated in, or directly affected by, a disciplinary proceeding," and a "grievant neither receives a legally cognizable benefit when an attorney is disciplined, nor sustains a legally cognizable injury when the attorney is not disciplined." Id. at 1245. "[T]he only one who stands to suffer direct injury in a disciplinary proceeding is the lawyer involved," while "the benefit of attorney discipline is bestowed upon the public at large." Id. The court analogized the situation to a victim's role in a criminal prosecution, explaining that a private citizen generally "lacks a judicially cognizable interest in the prosecution or nonprosecution of another" because a crime is a public wrong and a matter between the state and the accused, rather than between the accused and the accuser. Id. (quoting Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)). The court found "this logic applie[d] with equal force to the attorney disciplinary system." Id. Thus, for these and other reasons, the court joined "the many courts that have likewise held that a grievant does not have standing to challenge the disciplinary authority's disposition of a grievance." Id. (citing cases).

¶ 11.   Numerous other courts have reached the same conclusion. Like the Lath court, they emphasize the nature and purpose of the attorney-discipline process and the limited role that a complainant plays in this process. See, e.g., Boyce, 814 S.E.2d at 134 (explaining that purpose of attorney discipline is "to protect the public, the courts, and the legal profession," and once complaint is filed, "complainant's interest in the case going forward is the same as all other members of the public—to see a state agency protect the public from attorney misconduct by pursuing discipline for unethical behavior"); see also Akinaka v. Disciplinary Bd. of Haw. Sup. Ct., 979 P.2d 1077, 1084 (Haw. 1999) (per curiam) (reiterating that only person "who stands to suffer direct injury in a disciplinary proceeding is the lawyer involved," and that "complainant has no more standing to insert himself substantively into a license-based discipline system than he has to compel the issuance of a license"). As the Akinaka court observed, allowing complainants, "who have no actual stake in the outcome of disciplinary proceedings," to force disciplinary authorities "to conduct a full-scale investigation and hearing into every complaint it receives," regardless of merit, would be "an absurd waste of time and resources," it would "effectively usurp the discretionary authority" given to state disciplinary authorities, and it would "distort the aim and purpose of the disciplinary process." 979 P.2d at 1084.

¶ 12.    Like the states above, our attorney-discipline system serves "to protect the public from persons unfit to serve as attorneys and to maintain public confidence in the bar, as well as to deter other attorneys from engaging in misconduct."  Robinson, 2019 VT 8, ¶ 73 (quotation omitted).  To this end, the rules allow for the imposition of various sanctions against attorneys for misconduct.  See A.O. 9, Rule 8 (identifying possible sanctions).  The attorney-discipline process does not provide "a means of redress for one claiming to have been personally wronged by an attorney."  Cotton v. Steele, 587 N.W.2d 693, 699 (Neb. 1999).  Petitioner cannot show any "threat of actual injury to a protected legal interest" from Bar Counsel's dismissal of his ethics complaint, Turner, 2017 VT 2, ¶ 11, because the only individual "who stands to suffer direct injury in a disciplinary proceeding is the lawyer involved," Lath, 154 A.3d at 1245.  To conclude otherwise would "shift the focus of the disciplinary process from the public interest" to a grievant's "private interests," thereby contravening "the essential purpose of the attorney discipline system—to protect the public."  Lath, 154 A.3d at 1245.

¶ 13.    Petitioner offers no compelling argument to show standing.  For all the reasons set forth above, we reject his argument that he (or his client) suffered an "injury in fact" from Bar Counsel's screening decision through "the violation of [his client's] constitutional right to trial free of conflicts."  As previously discussed, the disciplinary process is not designed to vindicate the rights of a third-party complainant or that complainant's client.  The Court has no "inherent power," as petitioner suggests, to dispose of standing requirements in extraordinary relief proceedings.  Indeed, we note that the Lath court, like this Court, was presented with a request for extraordinary relief and dismissed for lack of standing.  We reach the same conclusion here.

The petition for extraordinary relief is dismissed.

BY THE COURT:

Marilyn S. Skoglund, Associate Justice

☒ Publish

☐ Do Not Publish

Beth Robinson, Associate Justice

Harold E. Eaton, Jr., Associate Justice

Karen R. Carroll, Associate Justice

4