NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 8

No. 2019-370

| | |
|---|---|
| Stephen Aguiar | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| David Williams | September Term, 2020 |

Helen M. Toor, J.

Stephen Aguiar, Pro Se, Petersburg, Virginia, Plaintiff-Appellant.

William L. Gagnon of Heilmann, Ekman, Cooley & Gagnon, Inc., Burlington, for
  Defendant-Appellee.

PRESENT:  Reiber, C.J., Robinson, Eaton, Carroll, JJ., and Skoglund, J. (Ret.),
          Specially Assigned

¶ 1.    **REIBER, C.J.**   This case involves a claim of conversion by a client against his former attorney.  Client Stephen Aguiar claims that attorney David Williams has failed to turn over files related to plaintiff's 2009 criminal prosecution. The civil division of the superior court granted summary judgment in favor of attorney, and client now appeals.  We affirm in part and reverse in part.

¶ 2.    The following information is drawn from the statements of facts submitted by the parties in connection with attorney's motion for summary judgment.  In July 2009, the U.S. District Court for the District of Vermont appointed attorney to represent client in his criminal prosecution for conspiracy to distribute heroin and cocaine.  By January 2011, the U.S. Attorney's Office for the District of Vermont (USAO) had provided attorney with more than 15,000 pages of discovery,

including documents, wiretapped recordings of thousands of telephone calls and related line sheets, and hundreds of hours of recorded calls made by client and his co-defendants.

¶ 3. Attorney asserts that he provided copies of all discovery material produced by that point in the case by the USAO, along with an iPod containing the wiretapped recordings, to client in January 2011, when client was incarcerated at the Essex County, New York jail. Attorney subsequently retrieved the iPod from client. Attorney provided a second copy of the materials to client after jail officials destroyed client's legal documents. Client agrees that attorney provided him with some documents, but disputes that he ever received all of the discovery materials from attorney.

¶ 4. In February 2011, the USAO agreed to provide attorney with statements and reports of its witnesses and prospective witnesses (hereinafter referred to as Jencks material[1]) if attorney agreed not to copy or disseminate them to any person, including client, and to return them to the USAO after the litigation concluded. Attorney was permitted to review the material in person with client. Attorney agreed to these terms. Attorney asserts that he allowed client to review the Jencks material during trial, but client denies this.

¶ 5. In April 2011, client was tried and convicted of conspiracy to distribute heroin and cocaine and five counts of distributing cocaine. He appealed his conviction. While the appeal was pending, attorney sent client a thumb drive containing documents copied from discovery indexes 1-5, 7-9, 11-13, and 15, as well as documents, recorded telephone calls, and video and audio recordings the USAO produced during discovery. Attorney sent client paper copies of documents included in discovery index 14, which the USAO had produced as paper copies. Attorney did not

---

[1] The Jencks Act bars the compelled disclosure of any statement or report made by a prospective government witness until that witness has testified on direct examination at trial. 18 U.S.C. § 3500(a). After a witness has testified, the court shall, on motion of the defendant, order the government to produce any statement of the witness that relates to the subject matter as to which the witness has testified for the defendant's "examination and use." Id. § 3500(b); see also F.R.Cr.P. 26.2 (providing procedure for disclosure of Jencks material).

send copies of the documents from discovery indexes 6 and 10 because he could not locate the compact discs containing that material at that time.[2]  Attorney also did not send client copies of the Jencks material, but sent client an index of that material.  Although client agrees that attorney sent him the above materials, he denies that they constituted a complete copy of his file.

¶ 6.     Client's conviction was affirmed by the federal appellate court in December 2013. United States v. Aguiar, 737 F.3d 251, 265 (2d Cir. 2013).  In March 2014, apparently in response to another request from client, attorney informed client that he would not make another paper copy of the file without a court order because he had already provided the discovery materials to client on the thumb drive.  In November 2014, attorney provided client with paper copies of all correspondence in the file but refused to reproduce the discovery materials because he had already provided client with copies.  Attorney's representation of client ended in December 2014.

¶ 7.     In July 2015, client sent attorney copies of two Drug Enforcement Administration subpoenas and requested that attorney send him all materials attorney produced in response to those subpoenas.  Attorney responded that he had already provided client with copies of everything in his file except for the Jencks materials.  In August 2015, client asked attorney to send him all paper documents and compact discs that attorney had in his files.  Attorney responded that he had already sent client what he had.  Attorney subsequently wrote to client and informed him that he would not make another copy of the file.  Attorney advised client to contact the USAO to request the Jencks material.

¶ 8.     Client filed a complaint with the Office of Disciplinary Counsel in September 2015, alleging that attorney committed unprofessional conduct because he did not provide client with paper and electronic copies of documents he received as discovery from the USAO.  Bar counsel determined that attorney did provide client with a copy of the file and that the Rules of Professional

---

[2]  During discovery in this case, attorney provided client with hard copies of the documents from discovery index 6 and a DVD containing recorded telephone calls copied from discovery index 10.

Conduct did not require him to provide another copy. Bar counsel noted that attorney had informed client that he would make the file available for inspection by anyone authorized by client and suggested that client accept the offer. Bar counsel closed the complaint and did not refer it for disciplinary action.

¶ 9.    In December 2018, client filed this action in the civil division of the superior court alleging that attorney had converted his files. He sought an order declaring that he was the owner of the files and directing attorney to turn over all files related to his representation. Attorney moved for summary judgment, arguing that it was undisputed that attorney had already provided client with copies of everything that he was allowed to disclose. Client denied that he had been provided with copies of everything, asserting that attorney had never provided him with trial exhibits. He also argued that he was entitled to the paper copy of the discovery file that attorney allegedly created for use at trial, the Jencks material, and the iPod on which attorney had stored the audio recordings.

¶ 10.    The trial court concluded that attorney had complied with his obligation to allow client to copy and inspect his files relating to client. It held that attorney had substantial grounds to refuse to produce copies of the Jencks material because of his agreement with the USAO. The trial court held that client was not entitled to attorney's original files or the iPod. It therefore granted summary judgment to attorney. Client moved for reconsideration, arguing that he owned the paper copy of the discovery file and the iPod and needed these materials because he was otherwise unable to access the digital materials that attorney had provided; that he had never received the trial exhibits; and that he was entitled to the Jencks material. The court denied the motion. Client then filed this appeal.

¶ 11.    On appeal, client argues that the trial court erred in granting summary judgment to attorney because client owns the original paper copy of the discovery file in attorney's possession

and attorney has refused to turn it over.[3] He claims that he was entitled to receive the Jencks material and trial exhibits and attorney has never provided those documents. Client also claims that he owns the iPod that attorney purchased so client could listen to recorded calls. Attorney argues that he was only required to give client an opportunity to inspect and copy the file, and that he has complied with this obligation several times over.

¶ 12. We review a decision granting summary judgment without deference, using the same standard as the trial court. Clayton v. Unsworth, 2010 VT 84, ¶ 15, 188 Vt. 432, 8 A.3d 1066. Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). In considering whether there is a genuine dispute as to any material fact, "we will accept as true all allegations made in opposition to the motion for summary judgment, so long as they are supported by admissible evidence." Fritzeen v. Gravel, 2003 VT 54, ¶ 7, 175 Vt. 537, 830 A.2d 49 (mem.).

¶ 13. We hold that client owns the entire contents of the file, subject to certain exceptions. We agree with the trial court that attorney had substantial grounds to refuse to disclose the Jencks materials to client and that client has failed to demonstrate an ownership interest in the iPod. However, we conclude that summary judgment was premature regarding two issues: whether client was entitled to a paper copy of the discovery file that attorney allegedly created for use at trial, and whether client has been provided with certain trial exhibits. We therefore reverse and remand for further proceedings on those issues.

---

[3] In his appellate brief, client refers to what he is seeking as his "complete legal file." However, client's statement of facts submitted in opposition to summary judgment, as well as his motion for reconsideration below, make clear that he is seeking access to a printed copy of his discovery file that attorney allegedly created for use at trial. Accordingly, we focus our analysis on those materials.

## I. Law Regarding Ownership of Client's File

¶ 14. To prevail on a conversion claim, the plaintiff must show that he or she owns property and "that another has appropriated the property to that party's own use and beneficial enjoyment, has exercised dominion over it in exclusion and defiance of the owner's right, or has withheld possession from the owner under a claim of title inconsistent with the owner's title." P.F. Jurgs & Co. v. O'Brien, 160 Vt. 294, 299, 629 A.2d 325, 328 (1993). Conversion may also be established if the defendant refused to return the owner's property when the owner demanded it. Id. at 299, 629 A.2d at 328-29. Here, client asserts that he owns the entire contents of the file in attorney's possession, and that attorney has converted his property by refusing to turn over a paper discovery file, the Jencks material, the iPod, and trial exhibits.

¶ 15. This Court has not previously had occasion to consider the rights of a client to case files created or maintained by an attorney in the course of representing that client. We begin our analysis by looking to the Vermont Rules of Professional Conduct, which, although they are "not designed to be a basis for civil liability," provide useful guidance when considering issues that arise within the attorney-client relationship. See V.R.Pr.C. Scope § 20. Rule 1.16 states that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . surrendering papers and property to which the client is entitled," although "[t]he lawyer may retain papers relating to the client to the extent permitted by other law." V.R.Pr.C. 1.16(d). Similarly, Rule 1.15 provides that "[e]xcept as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive." V.R.Pr.C. 1.15(d). Neither rule specifies precisely what papers or property belong to the client.

¶ 16. The majority of jurisdictions to consider this question have concluded that "once the attorney-client relationship has ended, the client's case files are the property of the client and

6

should be turned over" upon request, unless substantial grounds exist for the attorney to refuse disclosure. Averill v. Cox, 761 A.2d 1083, 1092 (N.H. 2000); see Iowa Supreme Court Attorney Disciplinary Bd. v. Gottschalk, 729 N.W.2d 812, 819-20 (Iowa 2007) (adopting majority approach requiring attorney to turn over entire file, subject to certain exceptions); Matter of Cupples, 952 S.W.2d 226, 234 (Mo. 1997) ("The client's files belong to the client, not to the attorney representing the client."); Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn L.L.P., 689 N.E.2d 879, 881 (N.Y. 1997) (collecting cases and state bar ethics opinions indicating that client is entitled to "full access to the entire attorney's file on a represented matter with narrow exceptions").[4]

¶ 17.    Section 46 of the Restatement (Third) of the Law Governing Lawyers adopts this approach, stating that a lawyer must deliver to a client or former client "at an appropriate time and in any event promptly after the representation ends, such originals and copies of other documents possessed by the lawyer relating to the representation as the client or former client reasonably needs," unless "substantial grounds exist for refusing to make delivery." Restatement (Third) of the Law Governing Lawyers § 46(3) (2000). Comment c to § 46 clarifies that "[t]hat right extends to documents placed in the lawyer's possession as well as to documents produced by the lawyer." Id. cmt. c.

---

[4] Some jurisdictions hold that the client is only entitled to "end product" documents, with work product documents leading to the creation of those end product documents remaining the property of the attorney. Sage Realty Corp., 689 N.E.2d at 881 (collecting cases). In a 1999 ethics opinion, the Vermont Bar Association appears to have adopted this approach. See Vt. Bar Ass'n Advisory Ethics Op. 99-07, https://www.vtbar.org/UserFiles/files/Webpages/Attorney%20Res ources/aeopinions/Advisory%20Ethics%20Opinions/Liens%20Attorney/99-07.pdf [https://perma .cc/8R6B-Z4F5] (stating that on termination of representation, attorney must turn over property delivered to attorney by client, "end product" of attorney's work, and all other material which is useful to client in fully benefiting from services of attorney). We note that "[b]ecause even under the majority rule a lawyer may withhold some non-end product documents (e.g., internal memoranda discussing assignment of lawyers, whether the lawyer must withdraw, or possible malpractice liability; or private notes), the differences between the majority and minority rules may not be substantial." In re ANR Advance Transp. Co., Inc., 302 B.R. 607, 614 (E.D. Wis. 2003) (citation omitted). We need not address those differences here because attorney does not seek to withhold any work product documents in this case.

¶ 18. The Restatement identifies certain situations when the lawyer may refuse to turn over documents, such as "when compliance would violate the lawyer's duty to another." Id. The lawyer may also refuse to disclose "certain law-firm documents reasonably intended only for internal review, such as a memorandum discussing which lawyers in the firm should be assigned to a case, whether a lawyer must withdraw because of the client's misconduct, or the firm's possible malpractice liability to the client." Id.

¶ 19. Comment d to section 46 clarifies that it is not necessary for a lawyer to turn over all original documents in every case:

> Even without a client's request or the discovery order of a tribunal, a lawyer must voluntarily furnish originals or copies of such documents as a client reasonably needs in the circumstances. In complying with that standard, the lawyer should consider such matters as the client's expressed concerns, the client's possible needs, customary practice, the number of documents, the client's storage facilities, and whether the documents originally came from the client. The client should have an original of documents such as contracts, while a copy will suffice for such documents as legal memoranda and court opinions. Except under extraordinary circumstances—for example, when a client retained a lawyer to recover and destroy a confidential letter—a lawyer may keep copies of documents when furnished to a client.

Id. cmt. d.

¶ 20. We agree with the majority approach as set forth in the Restatement, and conclude that a client's entire file, with narrow exceptions as identified in § 46, belongs to the client and upon request, should be turned over to the client upon termination of representation. This approach is consistent with an attorney's ethical obligation of open communication with the client. See Sage Realty Corp., 689 N.E.2d at 882 ("Among the duties of an attorney as a fiduciary and agent of the client are those of openness and conscientious disclosure."); V.R.Pr.C. 1.4(a) (requiring lawyer to keep client reasonably informed and to promptly comply with reasonable requests for information). Accordingly, we reject attorney's claim that he was only obligated to provide client an opportunity to inspect and copy the file. Under the Restatement approach and the majority rule,

where a client so requests, an attorney is obligated to turn over the contents of the file to the client promptly upon termination of representation, unless substantial grounds exist to refuse the request. We therefore consider whether the undisputed facts demonstrate that attorney met this obligation.

## II. Whether Client Received Materials to Which He Was Entitled

¶ 21.   Client maintains that he has not received the entire file in attorney's possession. Specifically, he asserts that he is entitled to receive, and attorney has refused to turn over, (1) the complete paper copy of his discovery file created by attorney for use at trial; (2) the Jencks material provided to attorney under his agreement with the USAO; (3) an iPod purchased by attorney, for which he was reimbursed by the federal court; and (4) trial exhibits provided to attorney by the USAO.  We address each category of material in turn.

### 1. Paper Copy of Discovery File

¶ 22.   Client asserts that attorney created a paper copy of the entire discovery file— apparently including some materials that were originally produced in digital format—for use at trial.  He argues that he owns these paper printouts because they were created for his benefit, and needs them because, due to his incarceration, it is difficult or impossible for him to access the materials in digital form.

¶ 23.   The trial court granted summary judgment on this issue because attorney had previously provided copies, some paper and some digital, of the discovery materials, and client had not demonstrated that there were any "original" documents, such as a will or a deed, that he reasonably needed.  As the court noted, in many cases it is sufficient for an attorney to provide a copy of a document in a client's file.  See Restatement (Third) of the Law Governing Lawyers § 46 cmt. d.  To the extent that client's conversion claim is based on attorney's failure to turn over "originals," we agree with the trial court that he has not demonstrated that there are any such originals that it is important for him to have.  See id.

¶ 24. However, client's claim regarding the discovery documents poses a different question that the trial court did not directly address: whether attorney is entitled to dictate the format in which client receives the contents of the file. We conclude that where an attorney has maintained the client's file in a certain format, the client is generally entitled to receive the file in that format unless the parties agree otherwise. Comment c to § 46 of the Restatement explains that a client is entitled to "retrieve documents in possession of a lawyer relating to representation of the client," as well as to inspect and copy such documents. Restatement (Third) of the Law Governing Lawyers § 46(3) cmt. c. While a lawyer may deny a client's request to retrieve, inspect, or copy documents in certain limited circumstances, such as when compliance would violate the lawyer's duty to another, "[o]rdinarily . . . what will be useful to the client is for the client to decide." Id. Separately, comment d states, "Except under extraordinary circumstances . . . a lawyer may keep copies of documents when furnished to a client." Id. cmt. d. In our view, these provisions support the conclusion that when a client requests documents from the file, generally the client is entitled to receive those documents in the format in which they were maintained by attorney if the client so desires. The attorney is entitled to keep copies in a different format for the attorney's records, but cannot insist that the client accept that format in lieu of the original format.[5]

¶ 25. We stress that the above ruling is focused solely on the _format_ of documents, not their contents. Whether a client is entitled generally to receive documents in the format maintained by the attorney is a separate question from whether the client is entitled to "originals" or whether an attorney has substantial grounds to refuse delivery of certain documents. As the trial court found, client has not demonstrated that he is entitled to the "original" paper printouts that are allegedly in attorney's possession (which themselves would seem to be copies); another paper

---

[5] Similarly, the client is not entitled to receive documents in a different format than originally maintained if the attorney does not agree to provide them in that format. We note that the question of who is responsible for copying and mailing the file is not before us in this case.

copy may suffice. Moreover, as mentioned above and discussed further below, an attorney may deny a client's request to retrieve, inspect, or copy documents under certain circumstances.

¶ 26. Here, client asserted in his affidavit that attorney printed a paper copy of the entire discovery file, including some or all of the digital materials. He argues that he reasonably needs a paper copy of those materials due to his incarceration. If found to be true, these facts are sufficient to demonstrate that client is entitled to have a paper copy, subject to the exceptions discussed elsewhere in this opinion. We therefore vacate the trial court's award of summary judgment on this issue and remand for further proceedings consistent with this opinion.

### 2. Jencks Material

¶ 27. The Jencks Act bars the compelled disclosure of any statement or report made by a prospective government witness in a federal criminal prosecution until that witness has testified on direct examination at trial. 18 U.S.C. § 3500(a). After a witness has testified, the court, on motion by the defendant, shall order the government to produce any statement of the witness in the possession of the government that relates to the subject matter as to which the witness has testified, for the defendant's "examination and use" at trial. Id. § 3500(b); see also F.R.Cr.P. 26.2 (setting forth procedure for requesting witness statements and clarifying that production and use occur at trial). The Jencks Act codified the right recognized in Jencks v. United States, in which the U.S. Supreme Court held that a defendant was entitled to an order directing the government "to produce for inspection" all reports of witnesses relating to their testimony at trial. 353 U.S. 657, 668-69 (1957).

¶ 28. The Jencks decision, Jencks Act, and Federal Rule of Criminal Procedure 26.2 give defendants a limited right to inspect witness statements. They "do[] not give defendants a property interest in such statements, or require the multiplication of copies of internal prosecution notes or reports for whatever use the defendants choose to make of them." United States v. Garcia, 406 F. Supp. 2d 304, 305 (S.D.N.Y. 2005). The federal government frequently seeks and obtains

11

protective orders prohibiting criminal defendants from retaining copies of Jencks materials because such information may be disseminated within prisons, endangering the cooperating witnesses who are identified in those materials. See id. at 306 (explaining rationale for protective order prohibiting copying and dissemination of Jencks materials and prohibiting defendants from taking such materials into prison facilities); see also United States v. Mitchell, No. 1:15-CR-00040-JAW-3, 2016 WL 7076991, at *4 (D. Me. Dec. 5, 2016) (granting protective order prohibiting defense counsel from copying Jencks materials and permitting defendant to review materials only in presence of counsel); United States v. Guerrero, No. 09 CR. 339, 2010 WL 1506548, at *12-13 (S.D.N.Y. Apr. 14, 2010) (same).

¶ 29. In this case, rather than seeking a protective order, the USAO agreed to provide the Jencks material to attorney prior to trial under the condition that attorney not copy or disseminate the materials to anyone including client, other than to review them with client in person. Attorney was therefore obligated not to provide the Jencks material to client and was entitled to refuse client's requests for copies of those documents. See Restatement (Third) of the Law Governing Lawyers § 46 cmt. c ("A lawyer may deny a client's request to retrieve, inspect, or copy documents when compliance would violate the lawyer's duty to another . . . ."); see also Schmidt v. Kimberly-Clark Corp., No. 09-C-0643, 2013 WL 989829, at *3 (E.D. Wis. Mar. 13, 2013) (holding client not "entitled to copies of documents his attorneys received on condition that they would not disclose [them] to others"). We agree with the trial court that attorney was entitled to judgment as a matter of law on client's claim that he converted the Jencks material.

¶ 30. Client argues that attorney's agreement with the USAO was invalid and not binding because it was made without his knowledge and was adverse to his interests, in violation of agency principles and attorney's ethical obligations. In general, a client is bound by the acts and representations of his attorney, although the client retains "control over important decisions affecting [the] client's substantial rights." New England Educ. Training Serv., Inc. v. Silver St.

12

P'ship, 148 Vt. 99, 101-02, 528 A.2d 1117, 1118-1119 (1987). Attorney's agreement with the USAO was a tactical decision that fell within attorney's authority to manage the conduct of the trial, and therefore did not require approval by client. See Taylor v. Illinois, 484 U.S. 400, 417-18 (1988) ("Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has—and must have—full authority to manage the conduct of the trial. The adversary process could not function effectively if every tactical decision required client approval." (footnote omitted)). The agreement did not affect client's substantial rights because client had no right to see the Jencks material until after the government's witnesses testified at trial, and no right to keep the material afterwards. There is no evidence that the agreement harmed client. To the contrary, it arguably benefited his defense, because it gave attorney more time to review and prepare a response to the expected testimony. We therefore disagree with client's argument that the agreement was invalid simply because attorney did not consult him about it.

¶ 31. Client alternatively claims that he was entitled to receive the Jencks material as part of discovery in this case. Client failed to preserve this claim by adequately raising it below. The record shows that client filed a motion requesting discovery generally, which the court denied because the parties had not yet attempted to resolve any dispute between themselves. Client then served attorney with broad discovery requests. Attorney responded to these requests but refused to disclose the Jencks material. Client did not file a motion to compel the disclosure of that material or otherwise argue to the trial court that he was entitled to receive the Jencks material as part of discovery. Because he failed to raise this argument with specificity and clarity before the trial court, he has not preserved it for our review. See Bull v. Pinkham Eng'g Assocs. Inc., 170 Vt. 450, 459, 752 A.2d 26, 33 (2000) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal.").

13

### 3. iPod

¶ 32.     Client next asserts that he owns the iPod that attorney purchased so that client could listen to recordings of wiretapped calls, because it was part of his file and attorney was reimbursed by the court for purchasing it. Client has not pointed to any evidence or legal authority to support his claim that he owns the device itself when it was paid for by the court. Client conceded at oral argument that attorney subsequently provided him with copies of the wiretapped call recordings that were contained on the iPod on another digital device. We therefore agree with the trial court that attorney is entitled to summary judgment on this claim. Cf. Livingston v. Town of Hartford, 2009 VT 54, ¶ 18, 186 Vt. 547, 979 A.2d 459 (affirming summary judgment where plaintiff cited no authority and provided no cogent legal theory to support claim that statute requiring town to conduct hearing provided private right of action for money damages).

### 4. Trial Exhibits

¶ 33.     Finally, we turn to client's claim that he never received copies of his trial exhibits. The trial court apparently overlooked this issue because it concluded, based on attorney's statement of facts, that attorney had previously provided to client everything except for the Jencks materials. However, in a sworn affidavit filed in response to attorney's motion for summary judgment, client asserted that attorney had never turned over 162 trial exhibits that attorney received from the USAO. Client's affidavit was sufficient to create a genuine dispute of material fact on this issue, making summary judgment premature.[6] See V.R.C.P. 56(c) (stating that party may demonstrate that fact is genuinely disputed by affidavit showing personal knowledge); see also Stone v. Town of Irasburg, 2014 VT 43, ¶ 63, 196 Vt. 356, 98 A.3d 769 (reversing summary

---

[6] In his brief, attorney argued that he gave client everything except the Jencks material, including "the voluminous discovery produced by the government which contains all the exhibits that were directly relevant to the Fourth Amendment issue [client] raised on appeal." At oral argument before this Court, attorney clarified that he did not give the original trial exhibits to client because he did not retain them, but argued that the discovery materials contained the same information. This fact is not in the record and therefore does not provide a basis for us to affirm the court's decision.

judgment where plaintiff's affidavit showed important facts were in dispute). We must therefore reverse and remand for further proceedings regarding the trial exhibits.

Reversed and remanded for further proceedings regarding the paper discovery file and trial exhibits; otherwise, affirmed.

FOR THE COURT:

_____

Chief Justice

¶ 34.    **ROBINSON, J., concurring in part, dissenting in part.**    I join the majority opinion in its entirety—with the exception of ¶ 32. I part ways with respect to the perplexing issue of the iPod. Though I acknowledge that it's a close question, I conclude that the iPod belongs to client. More important, I write separately to suggest that this is precisely the kind of case that would have been better resolved through Vermont's Professional Responsibility Program than a civil suit for conversion.

¶ 35.    With respect to the iPod, it is clear that client is entitled to the digital files in digital format if that is his expressed need. The Court today holds that the client owns the file, and at the conclusion of the representation, upon request, the attorney must generally provide the file to the client in the format in which it was kept unless the client agrees otherwise. This logic supports client's position that he is entitled to the recordings in digital format; and my understanding is that client has received those digital files on a thumb drive. The majority's holding doesn't resolve the question whether client owns and is entitled to the device in which the attorney stored those digital files.[7]

---

[7] The majority is right that client cited no authority to support his claim to the device. But the majority likewise cites no authority for its rejection of client's claim, leaving us with no analysis or arguments to support its conclusion concerning the iPod.

¶ 36.    The iPod serves two purposes:  It is the vessel in which the digital files are stored, and it is the tool through which they are accessed.  Insofar as it serves as a vessel for storing the digital files, it is analogous to a file cabinet in which an attorney stores a client's paper file.  It is generally owned by the attorney or law firm, and is dedicated to storing a client's files for a period of time.  In that scenario, the client owns the files, but not the file cabinet.  But what if the lawyer purchases the file cabinet specifically for the purpose of storing the client's files, attorney bills client for the cabinet, and client pays for it?  In that circumstance, doesn't the client who paid for the file cabinet own it?  It would be counterintuitive to allow the attorney to keep the file cabinet for the attorney's own use in the face of a direct request from the client who paid for the cabinet.  Likewise, with the iPod.

¶ 37.    Its status as a tool through which the files are accessed is even more significant.  An attorney may deliver digital files to a client on a thumb drive, but without the iPod or some other tool for playing the digital files, a client cannot actually access the files.  If a lawyer returns the client's file, but retains the iPod, the client doesn't have the benefit of the complete file but instead has to acquire or otherwise access a device to actually listen to the digital files.  The case for including the iPod as part of the client's file is even stronger than the case for including the filing cabinet.

¶ 38.    The fact that client did not personally pay for the iPod in this case shouldn't change the analysis.  It's true that client didn't personally pay for the iPod; but neither did attorney.  In the context of paying attorney's legal bills on behalf of client, the court bought the iPod.  But the court paid attorney for client's benefit, not for counsel's benefit.  It purchased the iPod specifically to facilitate attorney's representation and this client.  For that reason, as between client and attorney, it strikes me that client's claim to ownership of the iPod is superior to attorney's.  Why shouldn't client get the digital files stored on a device from which client can directly review them, rather than requiring client to accept a thumb drive, forcing him to subsequently find access to a device

that can play the digital recordings from the thumb drive?  (Attorney is, of course, free to keep copies of the digital files on a thumb drive.)  Moreover, differential treatment of criminal defendants who rely on government-funded counsel to defend them runs afoul of the purpose of the federal Criminal Justice Act.  See, e.g., United States v. Henderson, 525 F.2d 247, 251 (5th Cir. 1975) (noting "strong policy of [Criminal Justice Act] to furnish counsel and services to those unable to procure them so as to place such criminal defendant in a nearly equal position with a defendant who can pay").  For these reasons, as a matter of contract and property law, the client's case for ownership of the iPod is stronger than attorney's.

¶ 39.    Moreover, extrapolating from the principles in the Restatement that the lawyer is generally required to return to client those documents the client "reasonably needs" unless "substantial grounds exist for refusing to make delivery," Restatement (Third) of the Law Governing Lawyers § 46(3) (2000), and that "[o]rdinarily . . . what will be useful to the client is for the client to decide," id. cmt. c, this analysis favors client's position as well.  Client is incarcerated.  His ability to seek habeas corpus or other forms of relief on account of any infirmities in his conviction depends on his access to his case file—including the recordings stored in the iPod.  If the thumb drive does not provide sufficiently useful access to the file—and client tells us it does not—then client potentially faces obstacles of a constitutional magnitude.

¶ 40.    All of this discussion highlights the incongruity of addressing these issues in the context of a civil tort claim for conversion rather than through the Professional Responsibility Program.  The Professional Responsibility Program, as constituted at the time of the events at issue here,[8] was designed to, among other things, "resolve complaints against attorneys through fair and

---

[8]    The Court has recently amended Administrative Order 9.  See Order Promulgating Amendments to Administrative Order No. 9 (Nov. 2, 2020), https://www.vermontjudiciary.org/sites/default/files/documents/PROMULGATED%20AO%209%20Amendments%20-%20November%202020.pdf [https://perma.cc/8J6Q-B6YR]; see also Emergency Order Extending Effective Date for Amendments to Administrative Order No. 9 (Jan. 25, 2021), https://www.vermontjudiciary.org/sites/default/files/documents/PROMULGATED EmergencyExtensionofEffectiveDate%20AO%209%20%28002%29.pdf [https://perma.cc/4896-

prompt dispute resolution procedures." A.O. 9, Purpose. To that end, when a client complains to the Professional Responsibility Program, avenues exist for investigating the complaints and resolving them through various nondisciplinary dispute resolution methods, including engagement by Bar Counsel and referral to an Assistance Panel. A.O. 9, Rule 10.A, B. Moreover, the formal disciplinary process provides not only a means of developing an evidentiary record in the face of a factual dispute between client and lawyer, but a framework for addressing previously unresolved questions of Vermont law concerning, for example, ownership of client files. A decision to deny a complainant client access to the informal nondisciplinary dispute resolution processes, as well as the more formal disciplinary process potentially available through the Professional Responsibility Program, is subject to only limited review within the Professional Responsibility Program. See In re Faignant, 2019 VT 29, ¶ 13, __ Vt. __, 212 A.3d 623 (mem.) (holding that complainant lacked standing to petition Supreme Court for extraordinary relief to challenge Bar Counsel's decision to dismiss complaint). For that reason, complaints should be outright dismissed only when they clearly have no basis in fact or law, and further investigation and consultation with both lawyer and client is unlikely to move the conflict substantially closer to resolution.

¶ 41. For the above reasons, I concur in the majority's analysis and mandate, except that I dissent with respect to the iPod.

_____

Associate Justice

---

MABB] (extending effective date to Apr. 1, 2021). This amendment does not eliminate the objective of resolving disciplinary complaints against attorneys through fair and prompt dispute resolution procedures. In this dissent, I describe the objectives of the Professional Responsibility Program as described in the version of Administrative Order 9 in effect at the time of these events, and still in effect as of the date of this decision.