979 P.2d 1077

**Kenzo AKINAKA, Plaintiff–Appellant,**

**v.**

**DISCIPLINARY BOARD OF THE HAWAI'I SUPREME COURT; Carole R. Richelieu, In her capacity as Chief Disciplinary Counsel, Defendants–Appellees.**

**No. 21776.**

Supreme Court of Hawai'i.

June 30, 1999.

Kenzo Akinaka, on the briefs, plaintiff-appellant pro se.

Russell A. Suzuki, Deputy Attorney General, on the briefs, for defendants-appellees.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

PER CURIAM.

Plaintiff-appellant Kenzo Akinaka (Akinaka) appeals from the judgment of the first circuit court dismissing his complaint for declaratory and injunctive relief against defendants-appellees Disciplinary Board of the Hawai'i Supreme Court and Carole R. Richelieu in her capacity as Chief Disciplinary Counsel (appellees). Akinaka filed suit seeking to force appellees to initiate disciplinary proceedings against two attorneys who represented an individual that Akinaka had sued in an earlier partition action. The circuit court, in granting appellees' motion to dismiss and/or motion for summary judgment, concluded that appellees are immune from lawsuit and liability and dismissed the complaint against them.

For the following reasons, we affirm the decision of the circuit court but on the alternate ground that Akinaka had no standing to file his complaint against appellees.

## I. BACKGROUND

On June 13, 1990, Akinaka filed a complaint for partition of real property in the circuit court against William Kukahiko. *See Akinaka v. Kukahiko*, Civil No. 90–226. In his complaint, Akinaka asked the court to declare that he held a two-thirds interest in certain Hilo, Hawai'i property and that Kukahiko held a one-third interest in the property. Akinaka then asked the court for an order to sell the property and to distribute the proceeds to himself and Kukahiko according to their ownership interests. Kuka-

hiko's attorneys [1] responded by filing a counterclaim alleging that Kukahiko owned the entire property on the basis of a prior agreement of sale. The counterclaim also alleged that Akinaka held title to the Hilo property as trustee pursuant to a constructive trust and that Kukahiko was entitled to a conveyance of any interest Akinaka held as trustee.

The case went to trial on February 23, 1993. The trial court ultimately found in favor of Akinaka and entered judgment accordingly. The property was subsequently sold and the sale proceeds distributed two-thirds to Akinaka and one-third to Kukahiko.

Akinaka, however, felt that Kukahiko's attorneys were unethical in prosecuting the counterclaim. In particular, Akinaka argued that the counterclaim was unfounded because Kukahiko's attorneys withdrew the constructive trust theory at trial and failed to produce any evidence of an "agreement of sale." Akinaka also contended that Kukahiko's attorneys made false or unsubstantiated statements in a number of court pleadings and documents in order to bolster Kukahiko's claim of ownership in the property.

From 1991 through 1996, Akinaka filed numerous complaints against Kukahiko's attorneys with the Office of Disciplinary Counsel (ODC). After thoroughly investigating each of Akinaka's allegations, ODC repeatedly concluded that there were no factual or legal bases to support Akinaka's claims. ODC therefore declined to take any disciplinary action against Kukahiko's attorneys.[2]

Akinaka, however, was not satisfied with ODC's decision. On July 11, 1997, Akinaka filed a complaint for declaratory and injunctive relief against appellees seeking to force them to bring disciplinary proceedings against Kukahiko's attorneys.[3] In his complaint, Akinaka alleged that "Appellees' refusal to bring disciplinary action against [Kukahiko's attorneys] was an abuse of discretion and a violation of his First Amendment right to petition the government for a redress of grievances as set forth in the Bill of Rights to the United States Constitution." Akinaka thereafter asked for a declaratory ruling "that there exists probable cause for the Appellees to prosecute [Kukahiko's attorneys] for unethical conduct, and that Appellees be ordered to conduct a disciplinary hearing regarding alleged ethical violations by [them]."

Appellees subsequently moved to dismiss the complaint, or in the alternative, for summary judgment. In their motion, appellees argued, *inter alia,* that Akinaka's lawsuit was barred because they were immune from civil liability.[4] The trial court eventually agreed with appellees and entered an order finding that "there are no issues of disputed fact and as a matter of law appellees are immune from lawsuit and liability" and dismissed Akinaka's complaint with prejudice. Akinaka thereafter appealed.

On appeal, Akinaka argues that the trial court erred in granting appellees' motion to dismiss because appellees are not immune from an action for prospective declaratory

---

1. *See* Rules of the Supreme Court of Hawai'i (RSCH) Rule 2.22 ("[t]he files, records and proceedings of the Board, the hearing committees or officers, and Counsel, as they may relate to or arise out of any complaint or charge of unprofessional conduct against or investigation of an attorney, shall be deemed confidential").

2. In a letter representative of those sent by Carole R. Richelieu, then Assistant Disciplinary Counsel, to Akinaka, Richelieu stated that

> although you allege your belief that these attorneys filed fraudulent documents with the court and made unsubstantiated statements to the court, you have not provided any evidence to support your belief. The fact that the court may have ruled in favor of the plaintiff in 1993 is not dispositive of the issue of alleged misconduct; in any lawsuit, one party typically prevails.

3. At the hearing on appellees' motion to dismiss, Akinaka explained that he filed his complaint because

> I want the Disciplinary Counsel to do the job that it's supposed to do, that they were created to do, and yet they won't pass the first—I can't even get past the first base.

4. Appellees maintained that there were four bases for immunity: (1) Rule 2.8 of the Rules of the Supreme Court; (2) the doctrine of absolute quasi-judicial immunity as set forth in *Seibel v. Kemble,* 63 Haw. 516, 631 P.2d 173 (1981); (3) HRS § 26-35.5; and (4) the doctrine of sovereign immunity. *See Figueroa v. State,* 61 Haw. 369, 604 P.2d 1198 (1979); *Makanui v. Department of Education,* 6 Haw.App. 397, 721 P.2d 165 (1986).

and injunctive relief. Akinaka also argues that even if appellees are immune under Supreme Court Rule 2.8, that rule violates his first amendment right to petition the government for redress of grievances. We do not reach Akinaka's immunity arguments because we hold that Akinaka did not have standing to file his complaint against appellees.

## II. JURISDICTION

■ "Standing is concerned with whether the parties have the right to bring suit." *Pele Defense Fund v. Puna Geothermal Venture*, 77 Hawai'i 64, 67, 881 P.2d 1210, 1213 (1994). Although neither the parties nor the trial court considered the question of standing, this court has a duty, *sua sponte*, to determine whether Akinaka had standing to prosecute his complaint against appellees. *State v. Kam*, 69 Haw. 483, 488, 748 P.2d 372, 375–76 (1988). *See also Public Access Shoreline Hawaii v. Hawai'i County Planning Commission*, 79 Hawai'i 425, 431, 903 P.2d 1246, 1252 (1995) ("[i]t is well-settled that every court must determine as a threshold matter whether it has jurisdiction to decide the issue[s] presented") (citation, internal quotation marks and elipsis omitted). This is because in "the absence of ripeness and standing, we are without jurisdiction to consider this appeal." *State v. Moniz*, 69 Haw. 370, 373, 742 P.2d 373, 376 (1987).

■ "It is well settled that the crucial inquiry with regard to standing is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his or her invocation of the court's jurisdiction and to justify exercise of the court's remedial powers on his or her behalf." *In re Application of Matson Navigation Co. v. Federal Deposit Ins. Corp.*, 81 Hawai'i 270, 275, 916 P.2d 680, 685 (1996). In deciding whether the plaintiff has the requisite interest in the outcome of the litigation, we employ a three-part test: (1) has the plaintiff suffered an actual or threatened injury as a result of the defendant's wrongful conduct; (2) is the injury fairly traceable to the defendant's actions; and (3) would a favorable decision likely provide relief for plaintiff's

injury. *Bush v. Watson*, 81 Hawai'i 474, 479, 918 P.2d 1130, 1135 (1996).

■ With respect to the first prong of this test, the plaintiff "must show a distinct and palpable injury to himself [or herself.]" *Life of the Land v. Land Use Commission of State of Hawai'i*, 63 Haw. 166, 173 n. 6, 623 P.2d 431, 446 n. 6 (1981). The injury must be "distinct and palpable, as opposed to abstract, conjectural, or merely hypothetical." *Doyle v. Oklahoma Bar Ass'n*, 998 F.2d 1559, 1566 (10th Cir.1993) (citations omitted).

## III. OVERVIEW OF DISCIPLINARY PROCEEDINGS IN HAWAI'I

Because Akinaka misunderstands the nature and purpose of attorney disciplinary proceedings, we begin with an explanation of the disciplinary process in Hawai'i.

■ The attorney disciplinary system in Hawai'i is vested in three principal bodies—the Office of Disciplinary Counsel, the Disciplinary Board of the Hawai'i Supreme Court, and the Hawai'i Supreme Court. The object of the disciplinary process is not to punish lawyers but to protect members of the public and to ensure the orderly and efficient administration of justice by disciplining those attorneys who do not conform to the Hawai'i Rules of Professional Conduct:

[T]he legal profession affords unscrupulous attorneys exceptional opportunities to impose and prey upon those who entrust them with business, and it is essential that members of the profession, in their relation to the public and with clients, shall be strictly honest and worthy of trust and confidence. A certificate of admission to the bar is a representation made by this court that the possessor is worthy of the confidence of clients entrusting their interests to his care. The purpose of disbarment is not punishment of the attorney, but is for the protection of the public and to maintain the integrity of the profession and the dignity of the courts, of which the attorney is an officer.

*Disciplinary Board v. Kim*, 59 Haw. 449, 455, 583 P.2d 333, 334 (1978). *See also* C. WOLFRAM, MODERN LEGAL ETHICS 79 (1986) ("the underlying purpose of disci-

plining lawyers is a broad social one. The purpose is not to punish lawyers, but to protect the public, the bar, and legal institutions against lawyers who have demonstrated an unwillingness to comply with minimal professional standards"). To understand the aim of the disciplinary process in Hawai'i one must understand how each body functions and how it operates within the disciplinary system.

### A. *Office of Disciplinary Counsel*

■ The Office of Disciplinary Counsel "is the day-to-day operational arm of the Disciplinary Board," Kibe, *Overview of the Hawaii Attorney Discipline System*, 22 HAWAII BAR JOURNAL 83, 85 (1990), and has the power and duty "[t]o investigate all matters involving alleged misconduct called

5. Although most of the ethics complaints that ODC receives are in the form of letters from dissatisfied clients, ODC also receives referrals from court officers, other attorneys, and may even initiate an investigation *sua sponte*. *See* Kibe, *Overview of the Hawaii Attorney Discipline System*, 22 HAWAII BAR JOURNAL at 86.

6. Ethics complaints submitted to ODC must contain sufficient facts to enable ODC to conduct a thorough investigation. *Cf.* Kibe, *Overview of the Hawaii Attorney Discipline System*, 22 HAWAII BAR JOURNAL at 86–87 ("[c]omplaints which are submitted to ODC must be in writing and must contain sufficient factual detail to permit a meaningful investigation to be commenced. . . . If a complaint contains insufficient facts, the complaining party is asked to submit further information before an investigation is begun").

7. *See* RSCH Rule 2.6(b)(3) ("[t]he complaint may be dismissed because it "is frivolous on its face or falls outside the Board's jurisdiction"). On some occasions, ODC may include "cautionary information . . . in the dismissal notice to assist the attorney in avoiding similar complaints in the future." Kibe, *Overview of the Hawaii Attorney Discipline System*, 22 HAWAII BAR JOURNAL at 87.

8. If ODC determines that the attorney's actions constitute minor misconduct, ODC may agree with the attorney to have the matter submitted to non-disciplinary proceedings, such as arbitration, mediation, lawyer practice assistance, substance abuse recovery program, psychological counseling, or other proceedings authorized by the supreme court. RSCH Rule 2.7(b)(3). Subject to a few exceptions, *see* RSCH Rule 2.7(b)(2), ODC has sole discretionary authority to decide whether a matter constitutes a minor misconduct. RSCH Rule 2.7(b)(3).

to [it's] attention whether by complaint or otherwise." [5] RSCH Rule 2.6(b)(2). Once ODC receives an ethics complaint,[6] it conducts an investigation to see whether there is evidence that an attorney licensed to practice law in this State or an attorney specially admitted to appear in a particular proceeding in this State has violated, by act or omission, any provision of the Hawai'i Rules of Professional Conduct. *See* RSCH Rules 2.1, 2.2(b), and 2.7(a). Following its investigation, ODC may recommend one of the following: (1) that the complaint be dismissed with a finding of no disciplinary misconduct by the attorney;[7] (2) that non-disciplinary proceedings be initiated for minor misconduct;[8] (3) that the attorney be informally admonished;[9] or (4) that formal disciplinary proceedings be instituted.[10] RSCH Rule 2.7(a).

If the attorney does not agree with ODC regarding the submission of the matter to a non-disciplinary proceeding, ODC may institute formal disciplinary proceedings. RSCH Rule 2.7(b)(4).

9. An informal admonition is the least severe disciplinary sanction that can be imposed. RSCH Rule 2.3(a). "An admonition is a *private* sanction imposed by ODC and is usually imposed for first-time misconduct of a relatively non-serious nature." Kibe, *Overview of the Hawaii Attorney Discipline System*, 22 HAWAII BAR JOURNAL at 87. According to Rule 9, Rules of Procedure of the Disciplinary Board of the Hawaii Supreme Court ("DB"), "[a]n informal admonition signifies that misconduct has been found but is not of sufficient gravity to warrant institution of formal proceedings."

An informal admonition is imposed when ODC sends the attorney a certified letter notifying him or her of the admonition. The attorney then has ten days in which to respond. If the attorney rejects the admonition, the admonition is vacated and a formal disciplinary proceeding is subsequently initiated. If, on the other hand, the attorney does not demand a formal disciplinary proceeding, then the admonition is deemed to be imposed. DB 9.

10. ODC initiates a formal disciplinary proceeding by filing a petition for discipline with the Secretary of the Disciplinary Board. RSCH Rule 2.7(c); DB 11. The respondent attorney then has twenty days from the date of service in which to file an answer to the petition. RSCH Rule 2.7(c). After the answer has been served upon ODC and the Board, or upon the attorney's failure to file an answer, the Board chairperson assigns the matter to a hearing committee or officer. RSCH Rule 2.7(c); DB 11(f). If an

 Because ODC acts in a quasi-prosecutorial manner[11] in the disciplinary process, *see In re Ruffalo*, 390 U.S. 544, 551, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968), it "has full discretion to investigate, reinvestigate, weigh and reweigh actual or likely evidence, charge or not charge, and to reconsider and reverse or modify any decisions with respect to any of the foregoing at any time during the process." *Doyle v. Oklahoma Bar Ass'n*, 998 F.2d at 1566. The decision whether or not to file a formal complaint against an attorney is made by ODC with approval by the Disciplinary Board.

Once ODC makes its recommendation, the proposal is then reviewed by one of the two Disciplinary Board members assigned for that purpose. RSCH Rules 2.4(d) and 2.7(a). If the first Board member concurs with ODC's recommendation, the recommendation is thereafter implemented. RSCH Rule 2.7(a). If, however, the initial Board member disagrees with ODC's recommendation, ODC may request that the second Board member review its recommendation. The decision of the second Board member is final. RSCH Rule 2.7(a).

### B. *Disciplinary Board of the Hawai'i Supreme Court*

The Disciplinary Board is comprised of eighteen individuals who are appointed by the supreme court and serve staggered three-year terms. RSCH Rules 2.4(a) and 2.4(b). The Disciplinary Board has the power and duty to investigate ethics complaints and attorney incapacity, RSCH Rule 2.4(e)(1), supervise the ODC, RSCH Rule 2.4(e)(2), adopt rules governing attorney discipline procedures, RSCH Rule 2.4(e)(5), adopt and publish advisory opinions, RSCH

Rule 2.4(e)(6), and act as a reviewing body in which formal disciplinary action is taken. RSCH Rules 2.4(e)(3) and 2.5. In the event that formal disciplinary action is taken, the board chairperson assigns a hearing committee or officer to conduct the appropriate proceedings. *See supra* note 9 and accompanying text.

The bedrock principle that the attorney disciplinary process is for the protection of the general public and the administration of justice is reaffirmed by having a large number of non-lawyers serve on the Disciplinary Board.[12] "The presence of lay members on the Board ensures that the attorney discipline system remains accountable to the public. The participation of non-lawyers on the Board enhances the credibility of the lawyer ethics process and defeats allegations that complaints against lawyers are simply 'swept under the rug' by their peers." Kibe, *Overview of the Hawaii Attorney Discipline System*, 22 HAWAII BAR JOURNAL at 85. *See also* Devlin, *The Development of Lawyer Disciplinary Procedures in the United States*, 4 GEO. J. LEGAL ETHICS 911, 939 (1994) ("[j]udicial branch authority over a lawyer disciplinary system with public members assures that protection of the public is the primary purpose.... Non-lawyer participation provides assurance to the public that the disciplinary system is serving its interests, rather than those of individual lawyers").

### C. *Hawai'i Supreme Court*

 This court has the ultimate responsibility to "regulate the practice of law in this state and to ensure that the integrity of the profession is maintained by disciplining attor-

---

answer has been filed, the hearing committee or officer holds an evidentiary hearing and eventually issues findings of fact, conclusions of law, and a recommendation within thirty days of the hearing to the full Board. RSCH Rule 2.7(c); DB 12. The Board may thereafter affirm the recommendation, modify the recommendation, remand the matter for further hearing, or dismiss the petition. RSCH Rule 2.7(d); DB 14.

Unless the Board dismisses the petition, remands the proceedings, or concludes the matter by informal admonition or public or private reprimand, the Board must submit a report containing its findings, conclusions, and recommenda-

tions, together with the entire record, to the supreme court for final review and disposition. RSCH Rule 2.7(d); DB 17.

**11.** *See generally* Heely, *Bringing an End to a Scandal*, 15 HAWAII BAR JOURNAL 3, 13 (1980) ("[a] disciplinary action against a lawyer is unlike any other form of litigation. It includes elements conscripted more or less arbitrarily from criminal law, civil practice, administrative proceedings, and even arbitration").

**12.** Currently, six of the eighteen Board members are non-lawyers.

neys who indulge in practices inconsistent with the high ethical standards demanded of all members of the bar." *Office of Disciplinary Counsel v. Lau,* 79 Hawai'i 201, 207, 900 P.2d 777, 783 (1995) (citation omitted). *See also In re Corey,* 55 Haw. 47, 48, 515 P.2d 400, 401 (1973), *cert. denied,* 417 U.S. 911, 94 S.Ct. 2609, 41 L.Ed.2d 215 (1974) ("[t]his court has jurisdiction over matters concerning disciplinary action of members of the bar"); *In re Trask,* 46 Haw. 404, 415, 380 P.2d 751, 758 (1963) ("[t]he power to regulate the admission to practice and disbarment or disciplining of attorneys is judicial in nature and is inherent in the courts").

▪ Although ODC and the Disciplinary Board can impose remedial measures and lesser forms of sanctions against attorneys, only this court can impose the more severe disciplinary sanctions against an attorney for ethical misconduct. *See* RSCH Rule 2.3(a) (only the supreme court can disbar, suspend, or publicly censure an attorney for ethical misconduct). However, even these "[d]egrees of discipline must be disassociated with the concept of punishment for wrongdoing[.]" *State Bar of Michigan v. Block,* 9 Mich.App. 698, 158 N.W.2d 49, 54 (1968). For again, "[t]he purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public the legal system, and the legal profession." ABA Standards for Imposing Lawyer Sanctions Std 1.1, *reprinted in* SELECTED STATUTES RULES AND STANDARDS ON THE LEGAL PROFESSION 347, 358 (1990). The attorney disciplinary process is therefore not necessarily concerned with the individual client,[13] but rather with "the professional conduct and ethics of the attorney dealing with the client[.]" *Block,* 158 N.W.2d at 54.

## IV. AKINAKA DOES NOT HAVE STANDING

▪ Because of the nature and purpose of our disciplinary process, we reiterate that Akinaka had no standing to file his complaint against appellees because (1) Akinaka has no recognizable interest in the outcome of the ODC's investigation against Kukahiko's attorneys, and, therefore, (2) Akinaka was not injured by ODC's refusal to institute disciplinary proceedings against Kukahiko's attorneys.

▪ "We note first that a private person or a lawyer has no standing to participate in a disciplinary proceeding." *Application of Phillips,* 510 F.2d 126, 126 (2d Cir. 1975). This is because the private individual has no interest in the outcome of a disciplinary proceeding, inasmuch as the purpose of the disciplinary system is to protect the general public and the legal profession, not the private individual, from attorneys who commit professional misconduct. *See, e.g., Cotton v. Steele,* 255 Neb. 892, 587 N.W.2d 693, 699 (1999). As such, Akinaka, or any complainant for that matter, has no standing to participate in the disciplinary process because "one does not have standing to assert a violation of rights belonging to another, since the person entitled to a right is the only one who can be *directly* injured by its deprivation." *Doyle,* 998 F.2d at 1566. "The only one who stands to suffer direct injury in a disciplinary proceeding is the lawyer involved. [The complainant] has no more standing to insert himself substantively into a license-based discipline system than he has to compel the *issuance* of a license." *Id.* at 1567.

Moreover, Akinaka acquires no tangible benefit by participating in the disciplinary process. For when an attorney is disciplined for ethical misconduct, the purpose of such discipline is to correct the unprofessional conduct and/or to suspend the attorney from the practice of law until such remedial measures can be absorbed. This imposed discipline is not punishment, does not provide "a means of redress for one claiming to have been personally wronged by an attorney[,]" *Cotton,* 587 N.W.2d at 699, and does not

---

**13.** However, an aggrieved client can always seek redress against his or her attorney in civil court or may seek a complaint against the attorney in criminal court. *See infra* note 15.

translate into a cause of action that accrues to the private individual against the attorney.[14]

■ Akinaka's only function, as the complainant, in the disciplinary process is to supply evidence of the alleged attorney malfeasance to ODC. *See Ramos Colon v. United States Attorney for the District of Puerto Rico,* 576 F.2d 1, 5 (1st Cir.1978); *Starr v. Mandanici,* 152 F.3d 741, 748 (8th Cir.1998) (the complainant's "role begins and ends with the filing of his ethics grievance"). Akinaka has no right to dictate the course of an investigation or even compel ODC to take any action on his complaint. To conclude otherwise, as Akinaka would have us do,[15] would mean that complainants, who have no actual stake in the outcome of disciplinary proceedings, could force ODC to conduct a full-scale investigation and hearing into every complaint it receives, regardless of whether that complaint is unfounded or frivolous.

This would not only be an absurd waste of time and resources,[16] but it would also effectively usurp the discretionary authority that ODC has in considering whether to prosecute an ethics complaint against a lawyer, *see Doyle,* 998 F.2d at 1566; C. WOLFRAM, MODERN LEGAL ETHICS 101,[17] and would also distort the aim and purpose of the disciplinary process.

■ Finally, because the disciplinary process is designed to protect the public and the legal profession, not the private individual, from unprofessional attorneys, Akinaka suffered no cognizable injury when ODC refused to commence disciplinary proceedings against Kukahiko's attorneys:

> Thus, when a citizen files a disciplinary complaint, there are two possible outcomes: either some form of discipline is assessed against the attorney or no discipline is assessed. Neither result confers any legally cognizable benefit or causes

**14.** *See generally Orsini v. Larry Moyer Trucking, Inc.,* 310 Ark. 179, 833 S.W.2d 366, 369 (1992); *Nelson v. Miller,* 227 Kan. 271, 607 P.2d 438, 451 (1980) (a purported violation of ethical standards by an attorney does not give rise to a cause of action against the attorney by a third party).

**15.** On appeal, Akinaka also complains that ODC's refusal to take action against Kukahiko's attorneys violated his first amendment right to petition the government for redress of his grievances. We strongly disagree.

The attorney disciplinary process is designed only to safeguard the public and the judicial system from the unethical conduct of attorneys. As such, the disciplinary procedure does not provide monetary damages or any other form of civil relief for the aggrieved client, a fact that Akinaka himself recognized. *See* Letter from Akinaka to Charlene Norris, Assistant Disciplinary Counsel (June 8, 1992) ("I intend to seek redress and reparations by filing another suit in the near future, as the Disciplinary Counsel does not provide this function"). *See also* C. WOLFRAM, MODERN LEGAL ETHICS 101 ("[l]awyer discipline is not a substitute for civil proceedings for the settlement of interpersonal disputes").

However, there are "other remedies [that] exist which are adequate to protect adversarial third parties from the misconduct of unprofessional lawyers, such as malicious prosecution and abuse of process." Note, *Expanded Use of the Code of Professional Responsibility and the Rules of Professional Conduct: A Basis for Civil Liability?* 15 THE JOURNAL OF THE LEGAL PROFESSION 355, 364 (1990). *See also Bob Godfrey*

*Pontiac, Inc. v. Roloff,* 291 Or. 318, 630 P.2d 840, 848 (1981) (Attorney violation of ethical rules does not give rise to a private cause of action. "[O]ther remedies, such as malicious prosecution, adequately protect the public from harassment or abuse by unprofessional lawyers"). To seek such redress, Akinaka's course of action is to file a complaint in civil court for the appropriate relief. ODC's decision in no way prevents or infringes upon Akinaka's right to seek relief for any injuries that were allegedly caused by Kukahiko's attorneys.

**16.** *See Ramos Colon,* 576 F.2d at 5–6 ("[i]t is ridiculous to assert that the court has no alternative but to take action against the person complained of. If the court considers that no offense has been committed; or that the allegations of the complaint are insufficient, impertinent or scandalous; or that the complaint has been filed from an improper motive; or for any other reason decides not to proceed with the matter, the complainant has no recourse").

**17.** "The filing of complaint should not inevitably lead to a full-blown hearing. Complaints can be illfounded in fact, and complaints might misapprehend the duties of lawyers. For those reasons it is important that a discretionary function should be vested in a public official to screen complaints, informally consult with complainants to obtain additional information or to inform them about lawyers' duties, and possibly to settle minor complaints." C. WOLFRAM, MODERN LEGAL ETHICS 101.

any legally cognizable injury to the complainant who initiated the proceeding. Stated another way, one who files a disciplinary complaint against an attorney has no personal stake in the outcome of the proceeding other than whatever personal satisfaction or disappointment he or she may derive therefrom. The disposition of the disciplinary action does not deprive the complainant of any civil remedy he or she may have against the attorney who was the subject of the complaint.

Our system for disciplining attorneys exists for the protection of the public and not as a means of redress for one claiming to have been personally wronged by an attorney. Thus, any dereliction of duty of the part of Counsel for Discipline or his or her staff that results in failure to discipline an attorney who should be disciplined poses a risk of injury to the general public, not to any particular individual. Generally, sufficient standing as a party in litigation may not be based merely on a general interest common to all members of the public.

*Cotton*, 587 N.W.2d at 699.

We therefore affirm the judgment of the circuit court but on the ground that Akinaka lacked standing to bring suit against appellees. *Poe v. Hawai'i Labor Relations Board*, 87 Hawai'i 191, 197, 953 P.2d 569, 575 (1998) ("Where the circuit court's decision is correct, its conclusion will not be disturbed on the ground that it gave the wrong reason for its ruling.")