**Electronically Filed
Supreme Court
SCAD-23-0000396
21-JUL-2025
08:25 AM
Dkt. 46 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

OFFICE OF DISCIPLINARY COUNSEL,
Petitioner,

vs.

MARK R. ZENGER,
Respondent.

SCAD-23-0000396

ORIGINAL PROCEEDING
(CASE NO. DB 19-9001)

JULY 21, 2025

McKENNA AND EDDINS, JJ., AND INTERMEDIATE COURT
OF APPEALS JUDGE McCULLEN, IN PLACE OF DEVENS, J., RECUSED;
WITH RECKTENWALD, C.J., CONCURRING IN PART;
AND GINOZA, J., CONCURRING SEPARATELY

OPINION OF THE COURT BY EDDINS, J.

In this disciplinary proceeding, we find no Hawai'i Rules of

Professional Conduct (HRPC) violation. Thus, we dismiss the

Office of Disciplinary Counsel's (ODC) amended petition filed

against Mark Zenger.

**I.**

Opposing counsel, Stacey Joroff, filed a disciplinary complaint against Zenger.  Joroff represented a wife and Zenger a husband in a Family Court of the Fifth Circuit divorce case.

After a disciplinary board member approved initiation of formal disciplinary proceedings, ODC filed a petition for discipline and summons in August 2019.  See Rules of the Disciplinary Board (DBR) Rule 19(a) ("Counsel shall institute a Formal Disciplinary Proceeding when: (a) a Formal Disciplinary Proceeding is approved or ordered by a Reviewing Board Member[.]").  Then ODC filed an amended petition in October 2019.

ODC's amended petition alleged that Zenger's language in a memorandum in opposition constituted misconduct.  ODC said that "[Zenger's memorandum] characterized the opposing party and her counsel's tactics as 'sleazy[,]' 'sneaky[,]' 'engaged in an evil and intentional plan[,]' a 'hissy fit[,]' and handled with 'absolute neglect.'"  ODC also alleged misconduct at a February 28, 2018 chambers conference before Family Court Judge Edmund Acoba.  ODC said that during the chambers conference, Zenger raised his voice, used profanity, called Joroff "sneaky," "slimy," and "sleazy," and "loomed over Joroff and pointed his finger at her."

2

ODC maintained that Zenger's conduct violated HRPC Rules 4.4(a) and 3.5(c).

HRPC Rule 4.4(a) reads:

> In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.

HRPC Rule 3.5(c) reads: "A lawyer shall not engage in conduct intended or reasonably likely to disrupt a tribunal."

Zenger, an attorney since 1983 with a spotless professional record, denied violating the rules of professional conduct.

Seasoned Honolulu attorney David Lum (hearing officer) presided over the disciplinary hearing. In October 2020, Zenger moved to dismiss the amended petition's allegations that words in his memorandum violated ethical rules. Zenger maintained, among other things, that his statements were protected by the litigation privilege and the constitutional right to free speech. He said that he "at worst, engaged in rhetorical hyperbole, which is considered to be non-defamatory and fully protected by the First Amendment freedom of speech."

In February 2021, the hearing officer recommended that the Board Chair grant Zenger's motion to dismiss. In April 2021, the Disciplinary Board denied Zenger's motion and remanded the case to Hearing Officer Lum for further proceedings. See DBR Rule 4(a) ("The Chairperson approves the filing and dismissal of all petitions[.]") It reasoned that the litigation privilege

3

immunized Zenger in litigation, but not from possible discipline for professional misconduct, and that constitutional free-speech provisions did not foreclose disciplinary proceedings.

After the Board returned the case to the hearing officer, a hearing ensued. It spanned six days. Joroff, Zenger, and Judge Acoba testified. Zenger called Judge Acoba's court clerk. And he also called character witnesses Peter C. Wolff, former Federal Public Defender, and Trudy K. Senda, retired Fifth Circuit district court judge.

The hearing officer ruled in Zenger's favor. ODC had failed to clearly and convincingly show an HRPC violation. In November 2022, the hearing officer filed Findings of Fact, Conclusions of Law, and Recommendations for Discipline.

Next, we detail the material factual findings and legal conclusions.

The "hotly contested" divorce case involved custody and visitation, and financial-related issues. The parties attended mediation. They appeared to agree on custody and visitation. Property division and other matters concerning their children remained unresolved. On February 7, 2018, Joroff emailed Zenger, informing him that she would prepare a stipulation regarding custody and visitation. If Husband signed off, Joroff communicated, then her client would withdraw an upcoming motion for pre-decree relief.

In her email, Joroff wrote that she understood that Husband wanted to keep the home; therefore, an appraisal would need to be completed to determine the buyout amount. Joroff requested the most recent mortgage statement. Zenger did not reply to the email. Joroff did not send a draft stipulation.

On February 20, 2018, Joroff moved for an Immediate Sale and/or Order for Appraisal of Real Property. Without alerting Zenger, she sought and received a "quick answer" hearing date - February 28, 2018. Joroff declared: "[Husband] has stated that he wishes to buy [Wife] out of the property . . . [Wife] requests that an appraisal be ordered by the court with [Husband] paying for the appraisal since he is saying he wants to buy [Wife] out." Yet during litigation, Husband made no such representation. Hearing Officer Lum later found that "Ms. Joroff had no factual basis for her Declaration statement that [Husband] stated wanting to buy [Wife] out of the property. The statement was false because the only information she received was from [the mediator] telling her in mediation that [Husband] wanted to retain the home." Joroff served Husband by U.S. mail.

On February 26, 2018, Zenger filed Husband's memorandum in opposition to the motion. He disputed Joroff's assertion that Husband wanted to buy Wife's interest in the home. He explained that Wife had "arbitrarily short set" the hearing, and served the motion by "snail mail" on Zenger. Zenger wrote: "[Wife] did

5

all of these sneaky, sleazy things as part and parcel of an evil and intentional plan to 'sandbag' [Husband] and give him a very short time within which to file a cogent opposition." Zenger described Wife's actions as a "hissy fit" in retaliation for Husband's unwillingness to provide the mortgage information demanded in Joroff's February 7 email.

Right before the February 28 court hearing on the motion for property appraisal and sale, Judge Acoba summoned Zenger and Joroff to his chambers. As they sat, Joroff served Zenger with an unfiled copy of Wife's motion to set trial. It already had a hearing date, March 7, 2018. Judge Acoba asked the lawyers for the number of witnesses they aspired to call at trial. The court focused on matters relating to the motion to set and trial, and not the short-set hearing.

Zenger voiced displeasure about discussing an unfiled motion that he had just received. As for that day's hearing, neither Judge Acoba nor Joroff had read Husband's memo in opposition. The hearing officer added, Joroff "never filed a reply to address these words[.]" And he found that "[p]rior to her formal [disciplinary] hearing testimony, [Joroff] had never complained about or otherwise objected to [Zenger's] use of" words in the memorandum that the ODC alleged violated the ethical rules ("hissy fit," "sneaky," "sleazy," "evil and intentional plan," and "abject neglect").

Joroff's ODC complaint letter only mentioned Zenger's remarks during the chambers conference. (ODC later alleged that Zenger's memorandum in opposition language violated HRPC Rules 4.4(a) and 3.5(c).)

Judge Acoba did not view Zenger's conduct as disrupting the unscheduled chambers conference. The hearing officer related that Judge Acoba "never mentioned or questioned the propriety or the use of the words in the Memo [in] Opposition or warned against using or sought to sanction or hold [Zenger] in contempt for use of those words or for disrupting the tribunal with them."

Context was key to the hearing officer. He found that Zenger's words "descriptively characterize[d] the actions or inactions of [Wife], [Joroff's] client, in the context of the . . . divorce." Thus, Zenger's language "amounted to nothing more than statements of opinion about what was happening[] which . . . [were] based upon fully-disclosed facts."

The hearing officer made extensive findings about Zenger's conduct in relation to HRPC Rules 4.4(a) and 3.5(c):

> 6. Mr. Zenger delineated in the pleading a bases [sic] for why he felt that [Wife], through her attorney Ms. Joroff's motion constituted a "hissy fit[,]" why he believed that Ms. Joroff's client's actions were "sneaky" and "sleazy" and amounted to engaging in an "evil and intentional plan[,]" and why he thought that Ms. Joroff's client had handled her divorce case with "abject neglect[.]"

7. When Mr. Zenger asserted that Ms. Joroff's client has engaged in certain "sneaky" and "sleazy" things as part and parcel of an "evil and intentional plan[,]" he also again openly related why he felt that way: it was because Ms. Joroff's client has short-set the hearing on her motion for only 8 days later and then proceeded to serve the motion by depositing in the mail to Mr. Zenger, rather than serving him personally, in order to give him a very short time within which to file a cogent opposition. And, finally, when Mr. Zenger referenced Ms. Joroff's client's "abject neglect" in the handling of the divorce case, he told the court why: Ms. Joroff's client had not initiated formal discovery.

8. Under these circumstances, Mr. Zenger's use of these words in the pleading amounted to nothing more than statements of opinion about what was happening, which opinions are based upon fully-disclosed facts. These words, while some may deem to be exaggerated, emphasize a point.

9. The ODC has further presented no proof or evidence as to how or why Mr. Zenger's use of the aforesaid words had no substantial purpose other than to embarrass, delay or burden Ms. Joroff.

10. A reasonable lawyer could not find that Mr. Zenger meant to embarrass or publicly shame Ms. Joroff by filing the Memo in Opposition through use of these words, for example, sand bag [sic], given the revised statement of facts.

11. Mr. Zenger's language in the Memorandum in Opposition is not the type of obstreperous conduct that HRPC 3.5([c]) prohibits in the context of the situation facing [Husband].

In chambers, the conference got heated. Zenger and Joroff both talked loudly. Judge Acoba testified that Zenger and Joroff maintained at least three feet between them, even "once [Zenger] started leaning in." Contrary to ODC's allegation, the hearing officer found that Zenger did not point his finger within six inches of Joroff's face or chest or loom over her. The hearing officer also found that Zenger "was not out of

control, [and did not] yell, bully [or] physically threaten [Joroff] in any way, in protecting [his client's] interests."

The hearing officer credited Zenger's explanation that he said "horseshit" and "bullshit" to describe what "Ms. Joroff was attempting to do during the chambers conference when she insisted on proceeding forward with her Motion to Set which was unfiled yet had a hearing date assigned on March 7, 2018 and opposing his request for more time to put his position statement together." He found that "[Zenger] had ample 'ammunition'" to explain to Judge Acoba the implications of Joroff's motion to set and appraisal and sale filing. Zenger thus "never . . . used profanity or other words aimed to embarrass [Joroff]."

The hearing officer concluded there was no misconduct. The words objected to in the memo in opposition were not "personal attacks made with the intention of embarrassing" either Wife or Joroff nor were the words "intended or reasonably likely to disrupt a tribunal." The hearing officer believed that the memo's context mattered, and that Zenger made statements on behalf of Husband "to disclose the honest truths behind the actions of [Wife] and her counsel":

> The ODC has not presented by clear and convincing evidence the allegations pertaining to the words used in Memo in Opposition violate HRPC Rules 4.4(a) and 3.5(c). This is unlike ODC v. Luke ([attorney] suspended for calling an opposing party a "slut"). I do not consider the words objected to in the Memo in Opposition to be personal attacks made with the intention of embarrassing both or either of them. ODC has construed the Motion for Immediate Sale as a simple, routine motion for appraisal. I disagree

9

and find that the evidence is contrary to such characterization. That is important for my establishing the context in which the words were used in the Memo in Opposition. ODC claims that the Memo in Opposition was disproportionate to the language chosen by Ms. Joroff in her motion – previously citing an example as [Husband], through his counsel, lobbing a hand grenade in response to a firecracker. I again disagree. Read the title to an alleged routine motion for appointment of an appraiser for the property. I find that the better example from the evidence is hand grenade to defend against hand grenade. [Husband] and Mr. Zenger made these statements to disclose the honest truths behind the actions of [Wife] and her counsel. Nor do I find that the words in the Memo in Opposition were used intended or reasonably likely to disrupt a tribunal.

In finding no chambers conference misconduct, the hearing officer concluded that "[t]he ODC has not presented by clear and convincing evidence the allegations pertaining to conduct during the in chambers conference violated [HRPC] Rules 4.4(a) and 3.5(c). The words and conduct attributable to [Zenger] was [sic] not intended or had no substantial purpose other than to embarrass [Joroff], or intended or reasonably likely to disrupt a tribunal."

Thus, the hearing officer recommended that the Board dismiss the amended petition.

On March 2, 2023, the Disciplinary Board accepted the hearing officer's uncontested findings of fact. The Board had no quarrel with any finding. It concluded that the "[hearing officer's] decision of mixed findings of fact and law to dismiss the provoking writings was not clearly erroneous." But the Board rejected the conclusion of law that Zenger's in-chambers conduct was not misconduct under the HRPC. Thus, per DBR Rule

10

27, the Board ordered a public reprimand at its next regularly scheduled meeting. And it ordered Zenger to pay the Board all costs of the years-long disciplinary proceedings.

On March 2, 2023, the same day the Board issued its decision, Zenger filed his notice of rejection. See DBR Rule 27(b)(iii) ("If either Party rejects the Public Reprimand or the Respondent fails to appear without good cause, the Board shall file a report with the Supreme Court.")

Per Rules of the Supreme Court of Hawai'i (RSCH) Rule 2.7(d), the Board submitted the record to this court. In June 2023, the Board filed its Report, Findings, and Recommendations for the Imposition of Discipline (Board Report).

The Board sided with ODC. It broadly construed HRPC Rule 4.4(a) to cover profanity, voice tone, and descriptions of opposing counsel's tactics as misconduct. And it tethered its expansive view to the Guidelines of Professional Courtesy and Civility for Hawai'i Lawyers. The Board Report reasoned:

> The Hearing Officer made findings about [Zenger's] behavior at the chambers conference. [Zenger] was found or admitted to have used profanity ["horseshit" "bullshit"] and argued in a raised voice. In the course of which he described opposing counsel and her client's "sandbagging" tactics as "sneaky", "sleazy", "slimy", and "evil". . . .
>
> The Disciplinary Board considered his conduct unprofessional. A lawyer must endeavor to persuade [sic] a client's cause within the rules using facts and logic; not insults and ire. Lawyers are not hired thugs but are expected to be learned counsel to participate in the highly choreographed and finely tuned judicial apparatus. The Disciplinary Board, in light of the goals and aspirations inscribed in the rules of professional conduct and the guidelines for civility, finds that the ambit of rule

11

> 4.4(a) HRPC is broad enough to proscribe [Zenger's] behavior as alleged and admitted.
>
> Daily exposure to the pressures and stresses of the conflicts in which a lawyer is immersed should not distract the lawyer from measured professional conduct.

(Emphasis added.)

The Board relied on the Guidelines of Professional Courtesy and Civility for Hawai'i Lawyers to find misconduct and punish Zenger. The Board Report quoted the Guidelines. "The practice of law is an honorable and dignified profession. It is filled with clients in need, busy schedules, and crowded dockets. These guidelines are aspirational and will hopefully assist all in the legal profession and the justice system in conducting themselves in a manner that is fair, efficient, and humane."

Then the Board turned to the courtesy and civility guidelines to find misconduct, justify a public reprimand, and send a message to other attorneys.

> The Disciplinary Board considers this principle to be such an important message to the legal community that it views this case as appropriate for a public, rather than a private, reprimand.

This court granted Zenger's request to submit briefing pursuant to RSCH Rule 2.7(d) ("The supreme court will not entertain briefs or oral argument except[] . . . upon request of the supreme court.").

## II.

We find no violation of HRPC Rules 4.4(a) and 3.5(c). We hold that the Disciplinary Board erred.

12

First, we discuss the words in Zenger's memo.  The Disciplinary Board adopted the hearing officer's recommendation to dismiss the charges arising from Zenger's memo.  Thus, the Board does not seek to reprimand Zenger for his memo.  Given the Board's conclusions regarding Zenger's chambers language, though, we address ODC's charge that Zenger violated Rules 4.4(a) and 3.5(c) when he wrote "sneaky," "sleazy," "evil," and "hissy fit" to embarrass, delay, or burden Joroff and Wife in his memo.  Zenger's memo supplies the context to his chambers conduct.  Our analysis, like the hearing officer's, includes a look at the memorandum in opposition and ODC's allegation.

The hearing officer concluded that the context of the memo in opposition oriented the inquiry.  As the hearing officer understood, when it comes to attorney discipline under the HRPC, the circumstances matter.  Zenger made those statements on behalf of Husband "to disclose the honest truths behind the actions of [Wife] and her counsel."

The findings are undisputed.  According to the hearing officer, Wife's counsel made "false" statements about Husband's stance on the family home.  Wife short set the appraisal and sale hearing, and served Zenger by mail, leaving Zenger little time to respond.  Under the circumstances, the hearing officer did not err in ruling that Zenger's words were not "personal attacks made with the intention of embarrassing . . . either

13

[Wife or Joroff]." See Off. of Disciplinary Counsel v. Au, 107 Hawai'i 327, 337, 113 P.3d 203, 213 (2005) (explaining the Hawai'i Supreme Court is the trier of fact and law in attorney discipline cases).

Zenger also did not violate HRPC Rule 3.5(c). Judge Acoba "never mentioned or questioned the propriety or the use of the words in the Memo [in] Opposition or warned against using or sought to sanction or hold [Zenger] in contempt for use of those words or for disrupting the tribunal with them." Thus, we agree with the hearing officer that the memo's content was not reasonably likely to disrupt a tribunal. The language in Zenger's memorandum did not violate HRPC Rules 4.4(a) and 3.5(c).

Next, we discuss the chambers conference. Zenger's conduct in Judge Acoba's chambers did not constitute misconduct. As the hearing officer put it, "[t]he ODC has not presented by clear and convincing evidence the allegations pertaining to conduct during the in chambers conference violated [HRPC] Rules 4.4(a) and 3.5(c)."

The physical conduct that ODC alleged did not happen. Zenger neither pointed his finger within six inches of Joroff's face or chest, nor loomed over her, the hearing officer found. Instead, Zenger sat before a judge and protected his client's interests. He "was not out of control, [and did not] yell,

14

bully [or] physically threaten [Joroff] in any way, in protecting [his client's] interests."

The linguistic conduct that ODC alleged happened. But it was not misconduct. Zenger did not violate HRPC Rule 4.4(a). The hearing officer found that Zenger "never . . . used profanity or other words aimed to embarrass [Joroff]." We agree.

Though ill-mannered, the profanity ("horseshit" and "bullshit") and other words from the memo repeated by Zenger, were not intended to embarrass or burden Joroff. Rather, as the hearing officer concluded, the words described Joroff's litigation tactics. They expressed Zenger's reasonable complaints about service and that day's quickly-set hearing, and his protest about discussing an unfiled (yet scheduled) motion to set that Joroff had just served on him. The hearing officer observed, "[Zenger] had ample 'ammunition'" to explain to Judge Acoba the implications of Joroff's motion to set and her appraisal and sale filing.

We reject the Board's reliance on the Guidelines of Professional Courtesy and Civility for Hawai'i Lawyers to find misconduct under Rule 4.4(a) and its recommendation that we discipline Zenger.

The Board reported to this court: "The Disciplinary Board, in light of the goals and aspirations inscribed in the rules of

15

professional conduct and the guidelines for civility, finds that the ambit of rule 4.4(a) HRPC is broad enough to proscribe [Zenger's] behavior as alleged and admitted."

Because the HRPC does not integrate the Guidelines, we hold that failing to follow an aspirational "section" – like Section 6 Communications with Clients and Adversaries - does not subject an attorney to discipline under the HRPC. The Guidelines are not incorporated in the HRPC, so they are not factors the Board may rely on to enlarge the professional conduct rules and regulate a wider range of attorney conduct.

The Board's belief that the HRPC's scope is so broad as to embrace the Guidelines is misguided. Attorney discipline is quasi-criminal in nature. Matter of Thalheim, 853 F.2d 383 (5th Cir. 1988). While "[t]he object of the disciplinary process is not to punish lawyers," punishment still flows from an HRPC violation. See Akinaka v. Disciplinary Bd. of Hawai'i Sup. Ct., 91 Hawai'i 51, 55, 979 P.2d 1077, 1081 (1999) ("[The goal is to] protect members of the public and to ensure the orderly and efficient administration of justice by disciplining those attorneys who do not conform to the [HRPC]."); In re Disciplinary Bd. of Hawai'i Sup. Ct., 91 Hawai'i 363, 370, 984 P.2d 688, 695 (1999) ("Attorney disciplinary proceedings are not designed to be a forum for the disgruntled or a platform for the disaffected. Disciplinary proceedings are designed to protect

16

the public interest, the integrity of the judicial process, and the integrity of the courts, by providing a mechanism by which to determine whether an attorney admitted to practice in this state is fit to continue as an officer of the court.").

A disciplined attorney faces serious personal and professional consequences. Disciplinary proceedings are adversarial proceedings consuming time and resource efforts comparable to civil and criminal proceedings. See In re Ruffalo, 390 U.S. 544, 551 (1968) ("[Disbarment proceedings] are adversary proceedings of a quasi-criminal nature."); Akinaka, 91 Hawai'i at 57, 979 P.2d at 1083 ("ODC acts in a quasi-prosecutorial manner in the disciplinary process[.]") (footnote omitted). Findings imposing attorney discipline must be supported by clear and convincing evidence. RSCH Rule 8.9(e).

Attorneys facing disciplinary proceedings are entitled to procedural due process. Ruffalo, 390 U.S. at 551 (attorneys facing disbarment are entitled to due process); State v. Perez, 885 A.2d 178, 186 (Conn. 2005) ("[A] sanction for professional misconduct adversely affects an attorney's vested right to practice law. . . . Thus, attorneys subject to disciplinary proceedings are entitled to due process of law.") (quoting Briggs v. McWeeny, 796 A.2d 516, 528 (Conn. 2002)); In re Trask, 46 Haw. 404, 420, 380 P.2d 751, 760 (1963) (for attorneys accused of unprofessional conduct, "[a] fair trial by an

17

impartial tribunal is essential to due process"); Bank of Hawai'i v. Kunimoto, 91 Hawai'i 372, 388, 984 P.2d 1198, 1214 (1999) (out-of-state attorneys had limited property interests in pro hac vice status granting the procedural due process right to notice); Hallock Grievance Comm. for Tenth Jud. Dist., 180 N.E.3d 549, 552 (N.Y. 2021) ("[a] lawyer charged with misconduct is 'entitled to procedural due process, which includes fair notice of the charge'") (quoting Ruffalo, 390 U.S. at 550-51). Because our disciplinary rules aim to ensure fair process and procedure, they must provide sufficient "notice" to attorneys regarding what constitutes prohibited conduct.

Consistent with procedural due process, we reject the Board's broad reading embedding the Guidelines. Limiting the HRPC to the rules themselves ensures that attorneys clearly understand what constitutes professional misconduct, safeguards attorneys against arbitrary enforcement, and advances a fair and just application of the HRPC. See also RSCH Rule 2.2.

Per Rule 4.4(a), we examine whether Zenger's conduct intended solely to embarrass, delay, or burden others. See HRPC Rule 4.4(a). The rule thus excludes an examination of whether Zenger was "at all times . . . civil [and] courteous" pursuant to the Guidelines. See Guidelines of Professional Courtesy and Civility for Hawai'i Lawyers, Section 6: Communications with Clients and Adversaries.

18

Zenger's chambers conduct also did not violate Rule 3.5(c). Although we do not condone such occurrences, in context, Zenger's loud voice and word choices were not "abusive or obstreperous conduct" reasonably likely to disrupt a tribunal. HRPC Rule 3.5, cmt. 2 ("Refraining from abusive or obstreperous conduct is a corollary of the advocate's right to speak on behalf of litigants."). His comments pertained to the matters at hand. He did not try to undermine or challenge the court's authority. The conference was off record, and no parties, jurors, and members of the public were around. Cf. Off. of Disciplinary Counsel v. Breiner, 89 Hawai'i 167, 168, 969 P.2d 1285, 1286 (1999).

Under the circumstances, Zenger's conduct was not reasonably likely to disrupt a tribunal, and did not violate HRPC Rule 3.5.

We hold that the language in Zenger's memorandum and his conduct in chambers did not violate HRPC Rules 4.4(a) and 3.5(c).

### III.

Because the Board urges this court to publicly reprimand Zenger for a putative disregard of the Guidelines for Professional Courtesy and Civility, we go on.

HRPC Rule 4.4 does not, as the Board suggests, incorporate guidelines covering courtesy and civility. We decline to

19

formally reprimand Zenger for word choices that, when taken in context, do not constitute misconduct under the HRPC.

Honor and integrity are core features of the legal profession. Our profession is independent, self-regulated, and serves the public interest. The HRPC's Preamble reads: "The profession has a responsibility to assure that its regulations are conceived in the public interest and not in furtherance of parochial or self-interested concerns of the bar. . . . Neglect of these responsibilities compromises the independence of the profession and the public interest which it serves." The ODC and the Disciplinary Board hold key enforcement roles in the self-regulation of Hawai'i's legal industry.

But the Guidelines are not disciplinary rules. They do not regulate attorney conduct. They are ideals. See Guidelines Preamble ("The Guidelines are not mandatory rules of professional conduct, nor standards of care, and are not to be used as an independent basis for either disciplinary charges by the Office of Disciplinary Counsel or claims of professional negligence. They are offered for the guidance of lawyers and for the information of their clients, as well as for reference by the courts.").

Courts may look to the Guidelines to impose sanctions for attorney conduct. See State v. Talo, No. CAAP-20-0000565, 2022 WL 1640808, at *2 (Haw. App. May 24, 2022) (SDO). But court

sanctions differ from attorney discipline imposed by the Hawai'i Supreme Court under the HRPC.  RSCH Rule 2.2 ("The Hawai'i Rules of Professional Conduct, attached hereto as Exhibit A, shall govern the conduct of all attorneys subject to discipline under this rule.").

This court values courtesy and civility within the legal profession.  "[Z]ealously . . . protect[ing] and pursu[ing] a client's legitimate interests, within the bounds of the law, while maintaining a professional, courteous, and civil attitude toward all persons involved in the legal system" is a balance attorneys must aspire to.  See HRPC Preamble.

Still, the Guidelines of Professional Courtesy and Civility for Hawai'i Lawyers – laudable and goal-worthy as they are – have no impact on attorney discipline.

The Board calls for a public reprimand.  DBR Rule 27 details permissible attorney punishment.  Per Rule 27(a), a public reprimand "signifies that misconduct has been found." Because we find no misconduct, we decline to publicly reprimand Zenger.

Public reprimand or other disciplinary measures from a state's high court may seriously harm an attorney's livelihood and professional reputation.  See Hallock, 180 N.E.3d at 552 ("Sanctions imposed in disciplinary proceedings 'may have serious consequences resulting in impairment of repute, loss of

21

clientele, or, in the case of disbarment, loss of license to practice a profession which is their very source of livelihood.'"). Potential clients or employers may hesitate to hire or employ a disciplined attorney. Other attorneys, legal professionals, and judiciary employees may view the reprimanded attorney as unethical or untrustworthy. We decline to underestimate the career impact of a supreme court order that admonishes an attorney.

At the time of the ODC hearing, Zenger was well-regarded on Kaua'i. Judge Acoba testified that he "thought highly of [Zenger]" and considered Zenger "to be one of the best litigators on Kauai." Zenger "zealously represents his clients" Judge Acoba said, and because he has "[g]ood client control," the fifth circuit regularly appointed him to the most difficult criminal cases. Judge Senda related that Zenger is a "zealous advocate" and "very compassionate and very committed to access to justice." He is "one of the few attorneys here on island that always gladly accepts court appointed cases." Zenger "did pro bono work quite frequently," Judge Senda recalled. Zenger, she said, is "considered on this island a top tier litigator" who is "very committed to the justice system." Former Federal Public Defender Wolff and Judge Senda also testified to Zenger's reliability, moral character, and integrity.

A rebuke from this court is timeless; it mars an attorney's reputation forever. A Hawai'i attorney must act ethically and obey the HRPC. Or suffer professional consequences. And when ODC alleges misconduct, an attorney has the right to defend themself. The disciplinary rules aim to provide fair proceedings, consistent with due process. A Board recommendation finding misconduct based on violating guidelines outside the HRPC undercuts the framework and purpose of the HRPC. When a case like this reaches us, we decide whether an attorney has violated the HRPC, or not. Deciding whether an attorney offended guidelines is just not something this court should do in HRPC proceedings.

The concurrence's framing of our reference to the record's evidence about Zenger's professional life as "impliedly and unfairly convey[ing] a sentiment that Stacey Joroff's experience in chambers that led to her filing a disciplinary complaint was groundless" misses the context. Our discussion solely stresses the reputational and career impact that a disciplinary reprimand from this court may inflict on an otherwise well-regarded attorney. It also highlights the private interests that prompt this court to ensure procedural due process for attorneys accused of misconduct. Because Joroff's reputation is not the focus of the ODC proceedings, we neither uplift nor disparage hers.

This court does not rule by "sentiment." As we say, context is key in this case. We do not comment on the "grounds" for ODC complaints. This court determines whether attorneys violate the HRPC. Whether Joroff's actions "warranted" Zenger's conduct, or whether Zenger's conduct constituted "zealous advocacy" are not truly part of this HRPC inquiry. Given the context of the legal proceedings, Zenger's chambers conduct was not intended to disrupt the tribunal, or embarrass, delay, or burden Joroff. Thus, Zenger did not violate the HRPC.

The hearing officer found that "use of [words like 'sneaky' and 'sleazy'] in the pleading amounted to nothing more than statements of opinion about what was happening [which were] based upon fully-disclosed facts." Because we do not believe this court should reprimand attorneys for not meeting aspirational goals in the context of HRPC disciplinary proceedings, we do not address whether seven dirty words – "sneaky," "slimy," "sleazy," "evil," "hissy fit," "horseshit," and "bullshit" - violate the Guidelines or deserve protection under the litigation privilege.

Our regulatory framework does not allow this court to find no professional misconduct, yet police words to see if a lawyer lived up to an ideal.

We hold that Zenger did not violate HRPC Rules 4.4(a) and 3.5(c). ODC failed to show that Zenger's conduct had "no

24

substantial purpose other than to embarrass, delay, or burden"

Joroff. See HRPC Rule 4.4(a). ODC also failed to show that

Zenger's conduct was "intended or reasonably likely to disrupt a

tribunal." See HRPC Rule 3.5(c).

We dismiss ODC's amended petition.

| | |
|---|---|
| Walter Hebblethwaite<br>(on the briefs)<br>for petitioner | /s/ Sabrina S. McKenna<br><br>/s/ Todd W. Eddins<br><br>/s/ Sonja M.P. McCullen |
| James A. Kawachika<br>(on the briefs)<br>for respondent | |



25